WESTPORT INSURANCE CORPORATION, Plaintiff and Counterdefendant-Appellee, v. JACKSON NATIONAL LIFE INSURANCE COMPANY, Defendant and Counterplaintiff (Stonecrafters, Inc., Defendant and Counterplaintiff-Appellant; Handleman Insurance Agency, Inc., Defendant).

Second District    No. 2—07—1205

Opinion filed December 19, 2008.

---

Brian J. Wanca and Steven A. Smith, both of Anderson & Wanca, of Rolling Meadows, and Phillip A. Bock and Robert M. Hatch, both of Bock & Hatch, LLC, of Chicago, for appellant.

Michael P. Tone and Kimberly E. Blair, both of Gordon & Rees LLP, of Chicago, for appellee.

JUSTICE McLAREN delivered the opinion of the court:

Defendant, Stonecrafters, Inc. (Stonecrafters), appeals from an order of the circuit court of McHenry County entering summary judgment for plaintiff, Westport Insurance Corporation (Westport), in an action for a declaratory judgment. Westport sought a declaration that coverage under an insurance policy issued to Jackson National Life Insurance Company (Jackson) did not extend to the liability of the Handleman Insurance Agency, Inc. (Handleman), arising from the transmission of unsolicited faxes advertising group health insurance. We affirm.

The declaratory judgment action underlying this appeal is related to a class action lawsuit filed by Stonecrafters against Handleman. Stonecrafters alleged that the transmission of unsolicited faxes to it and to other businesses violated federal law and gave rise to a private cause of action for damages. The advertisement faxed to the plaintiff class promoted "Group Health Insurance With Affordable Premiums!"

It touted various benefits of the insurance, such as "PPO with Freedom of Choice," "Maternity Care," and "Inpatient Hospital Services." It also set forth a table of premiums based on age and gender. The table was accompanied by the following legend:

> "*Illustrated Monthly premiums represent* one of our many group health insurance plans, and are based on the maximum allowable *good-health discount,* suburban residence. [*sic*] & *favorable nature of business. Eligible employers with 2-50 employees cannot be rejected due to medical history, but final premiums may vary based on the overall composition of your group.* Once issued, premium tables are guaranteed for a one year period." (Emphases in original.)

The advertisement invited potential customers to request a quotation.

The parties settled the class action lawsuit and entered into an agreed order entering judgment for $2 million in favor of the plaintiff class. As part of the settlement, Handleman assigned to the plaintiff class all of its rights to indemnity from its insurers, including Westport. Westport had issued to Jackson an insurance policy entitled:

> "Insurance Company Coverage for Insurance Agents and Brokers Professional Liability"

Handleman is insured under the policy as one of Jackson's agents.

The policy provides, in pertinent part, as follows:

> "[Westport] agrees to pay on behalf of the Insured such loss *** sustained by the Insured by reason of liability imposed by law for damages caused by any negligent act, error or omission by the insured agent or for damages caused by libel or slander or invasion of privacy by the insured agent, arising out of the conduct of the business of the insured agent in rendering services for others as a licensed life, accident and health insurance agent, a licensed life, accident and health insurance general agent or a licensed life, accident and health insurance broker while there is in effect a contract between the Named Insured and the licensed insured agent."

In the declaratory judgment action giving rise to this appeal, Westport named Stonecrafters, Handleman, and Jackson as defendants. Westport maintained that Handleman's liability in the class action lawsuit did not arise from the conduct of Handleman's business in rendering services for others as a licensed insurance agent. Stonecrafters filed a counterclaim seeking a declaration that Westport was obligated to pay the proceeds of the policy to the plaintiff class in the lawsuit against Handleman. Stonecrafters moved for judgment on the pleadings, and Westport, in turn, moved for summary judgment. The trial court granted Westport's motion and denied Stonecrafters'. Stonecrafters brought this appeal.

■ Before proceeding, we note that, on our own motion, we directed the parties to submit supplemental briefs addressing the applicability of an endorsement to the policy excluding coverage for "any 'claim' or suit in which a court certifies a class action against the Named Insured or any of its subsidiaries or related entities." Jackson is the "Named Insured." Upon review of the supplemental briefs, we conclude that Westport has waived any coverage defense based on this endorsement. We use the word "waive" in its preferred sense as referring to the voluntary relinquishment of a known right. *People v. Blair*, 215 Ill. 2d 427, 444 n.2 (2005). It is evident that Westport made a deliberate choice not to pursue an argument based on the endorsement. We see no reason not to honor that choice, and we will therefore consider the matter no further.

Summary judgment is appropriate where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2—1005(c) (West 2006). We review *de novo* the trial court's ruling on a summary judgment motion. *Jones v. Chicago HMO Ltd. of Illinois*, 191 Ill. 2d 278, 291 (2000). Here, the material facts are not in dispute. Whether the policy issued by Westport covers Handleman's liability is a question of law.

Stonecrafters argues that the distribution of its advertisement was part of the conduct of its business and constituted a service for others. According to Stonecrafters, the word "services" in the policy issued should be given its ordinary meaning. Citing the Random House College Dictionary, Stonecrafters contends that a service is any "act of assistance." Random House College Dictionary 1203 (rev. ed. 1984). Stonecrafters contends that providing information to potential customers about the availability of group health insurance coverage was an act of assistance and was therefore within the scope of the coverage provided by the policy.[1]

Our supreme court has offered the following summary of the principles governing the construction of language in an insurance policy:

> "Insurance policies are subject to the same rules of construction applicable to other types of contracts. [Citation.] A court's primary

---

[1]Interestingly, in the realm of intellectual property law, the informational aspect of advertising for a product or service does not make the advertisement a service in its own right. See *In re Dr. Pepper Co.*, 836 F.2d 508, 509 (Fed. Cir. 1987) (the words "Pepper Man" used in contests to promote a soft drink could not be registered as a service mark).

objective is to ascertain and give effect to the intention of the parties as expressed in the agreement. [Citation.] In performing that task, the court must construe the policy as a whole, taking into account the type of insurance purchased, the nature of the risks involved, and the overall purpose of the contract. [Citation.]

The words of a policy should be accorded their plain and ordinary meaning. [Citation.] Where the provisions of a policy are clear and unambiguous, they will be applied as written [citation] unless doing so would violate public policy [citation]." *Nicor, Inc. v. Associated Electric & Gas Services Ltd.*, 223 Ill. 2d 407, 416-17 (2006). Applying these principles here, we first note that the title of the policy clearly indicates that the policy provides coverage for "professional liability." Although it may not be an operative term of the policy, the title clearly indicates the type of insurance that Jackson purchased to cover its agents (including Handleman). And, as seen, the type of insurance purchased is germane to determining the meaning of policy language. Thus we read the phrase, "rendering services for others as a licensed life, accident and health insurance agent, a licensed life, accident and health insurance general agent or a licensed life, accident and insurance broker," to signify the agent or broker's *professional* services.

Referring to what it labeled "professional liability policies" issued to real estate professionals, our supreme court has stated:

"[T]he risks undertaken by the insurers are those which are inherent in the practice of the real estate profession. Although there may be a myriad of risks to which one performing services in a real estate professional capacity may be exposed, covered risks are only those which inherently arise out of the rendering of the real estate services." *Crum & Forster Managers Corp. v. Resolution Trust Corp.*, 156 Ill. 2d 384, 393 (1993).

Stonecrafters is correct to note that it is the actual language of a policy that ultimately controls the determination of what risks are covered. The policy language at issue in this case is similar but not identical to the language in *Crum & Forster Managers Corp.*, and the risks at issue in that case—liability for intentional business torts and unfair competitive practices—were considerably different from the risk at issue here. Thus, *Crum & Forster Managers Corp.* is of only limited value in determining whether Handleman's marketing activities are the types of professional services contemplated by the language of the policy. However, we find a more useful analogy, as well as a cogent analysis, in a decision from another jurisdiction—*Atlantic Lloyd's Insurance Co. of Texas v. Susman Godfrey, L.L.P.*, 982 S.W.2d 472 (Tex. App. 1998). The issue in that case was whether an insurance policy covered a law firm's liability for statements in a letter soliciting

a potential client with a possible medical malpractice claim. The letter allegedly defamed Larry Likover, the physician who had treated the potential client. The policy excluded liability arising from "professional services." In concluding that the solicitation did not constitute professional services, the court observed:

"[I]t is clear that a professional must perform more than an ordinary task to perform a professional service. To qualify as a professional service, the task must arise out of acts particular to the individual's specialized vocation. We do not deem an act a professional service merely because it is performed by a professional. Rather, it must be necessary for the professional to use his specialized knowledge or training." *Atlantic Lloyd's Insurance Co. of Texas*, 982 S.W.2d at 476-77.

The insurer argued that the solicitation letter contained statements that reflected "specialized knowledge inherent to the legal profession." *Atlantic Lloyd's Insurance Co. of Texas*, 982 S.W.2d at 477. The court disagreed:

"The Firm did not render professional services in the letter. None of the opinions or language in the letter provided legal services. The Firm did not advise Likover's former patient, but rather invited him to contact the Firm. The letter offered no legal opinion with respect to the patient's particular case. The letter simply acknowledged that he was a former patient of Likover and that Likover previously had been the subject of litigation. The letter then concluded by offering the possibility of representation. The Firm merely engaged in a practice designed to acquire new business.

The Firm outlined the possibility for representation. If the recipient of the solicitation letter chose to pursue representation, then the Firm would have the opportunity to offer professional services. The letter itself does not provide any professional services. It is merely a medium for attracting new clients, and thus is incidental to the profession. The decision to send a solicitation letter to Likover's former patient *** was not the rendering of professional services. The solicitation letter was rather an invitation to pursue the opportunity to render professional services. The Firm's potential liability did not arise from acts in rendering professional services. Instead, the Firm's potential liability arose from allegedly defamatory statements contained in the solicitation letter, the sending of which was incidental to professional services." *Atlantic Lloyd's Insurance Co. of Texas*, 982 S.W.2d at 477-78.

■ Similar observations apply here. Insurance sales professionals use special knowledge and training about insurance products to help customers select products that are best suited to their particular needs.

Handleman merely sent out an advertisement describing general features of a plan or plans for "Group Health Insurance With Affordable Premiums." The advertisement set forth a table of illustrated monthly premiums, but made clear that actual premiums would depend on the "overall composition" of the insured group. Thus, the advertisement was merely an overture to potential customers. Even if Stonecrafters is correct that the delivery of this general information was an "act of assistance" and thus, in very broad terms, "a service," it did not amount to rendering a service *as an insurance professional* within the contemplation of the policy. No expertise was employed to help a particular customer purchase a particular product. The mere offer to perform a professional service is not a professional service in its own right.

For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

Affirmed.

BOWMAN and BURKE, JJ., concur.