# ILLINOIS OFFICIAL REPORTS

## Appellate Court

*Standard Mutual Insurance Co. v. Lay*, 2012 IL App (4th) 110527

| | |
|---|---|
| Appellate Court Caption | STANDARD MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. NORMA LAY, Individually and as Executrix of the Estate of THEODORE W. LAY, d/b/a TED LAY REAL ESTATE AGENCY, Defendant, and LOCKLEAR ELECTRIC, INC., an Illinois Corporation, Defendant-Appellant. |
| District & No. | Fourth District Docket No. 4-11-0527 |
| Argued | March 20, 2012 |
| Filed | April 20, 2012 |
| Rehearing denied | June 11, 2012 |
| Held (*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | Summary judgment was properly entered for plaintiff insurer in an action seeking a declaratory judgment that it had no duty to defend its insured, a real estate agency that was sued for violating the Telephone Consumer Protection Act by sending unsolicited faxes regarding the sale of certain real estate, since the $500 in liquidated damages provided by the Act per occurrence is a penalty in the nature of punitive damages and punitive damages are not insurable as a matter of Illinois law and public policy. |
| Decision Under Review | Appeal from the Circuit Court of Macoupin County, No. 09-MR-32; the Hon. Patrick J. Londrigan, Judge, presiding. |
| Judgment | Affirmed. |

Counsel on Appeal

Michael T. Reagan (argued), of Law Office of Michael T. Reagan, of Ottawa, Philip A. Bock, of Bock & Hatch, LLC, of Chicago, Brian J. Wanca and David M. Oppenheim, both of Anderson & Wanca, of Rolling Meadows, and Paul W. Bloomer, of Denby, Meno, Bloomer & Denby, of Carlinville, for appellant.

Robert Marc Chemers (argued) and Peter G. Syregelas, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellee.

Panel

JUSTICE KNECHT delivered the judgment of the court, with opinion.

Justices Steigmann and Cook concurred in the judgment and opinion.

## OPINION

¶ 1    In June 2006, Theodore W. Lay, d/b/a Ted Lay Real Estate Agency (Lay), faxed an advertisement in regard to the sale of a particular property to Locklear Electric, Inc. (Locklear), and others. Because the facsimile message (fax) recipients had not given permission to receive these messages, Lay violated the Telephone Consumer Protection Act (TCPA) (47 U.S.C. § 227 (2006)). The statute imposes a penalty in the amount of $500 for each fax sent. Lay was sued in a class action with Locklear as the class representative. Defense of the claim was tendered to Standard Mutual Insurance Company (Standard), Lay's insurance carrier, which undertook the defense under a reservation of rights. Standard also filed this declaratory judgment action to determine its coverage under its policies.

¶ 2    The TCPA claim against Lay was a potential multimillion-dollar claim which would bankrupt the agency if a verdict were entered against it and it was not covered by insurance. Lay opted for independent counsel to represent it and then settled with the class action plaintiff for $1,739,000 plus costs (the full amount sought in the class action complaint) and assigned its rights against Standard to the class in exchange for a promise by the class not to execute on any of Lay's property or assets other than the insurance policies with Standard.

¶ 3    The settlement was approved by the federal district court and Locklear, the class representative, became actively involved in this declaratory judgment action filed by Standard in Macoupin County. Both Standard and Locklear ultimately filed for summary judgment in the declaratory judgment. After extensive briefing, the trial court denied Locklear's motion and granted that filed by Standard. Locklear appeals and we affirm.

¶ 4                                    I. BACKGROUND

¶ 5    Lay, a small real estate agency located in Girard, Macoupin County, Illinois, hired a fax broadcaster to assist in his advertising effort in selling a property listing. The fax broadcaster (Business 2 Business Services) offered a "blast fax" service to Lay where fax advertisements were sent to thousands of fax machines cheaply. The broadcaster represented to Lay the

recipients of the faxes would be only entities who consented to receiving fax messages such as the one contemplated by Lay. Lay agreed, and on June 13, 2006, the faxes were sent by the broadcaster on behalf of Lay.

¶ 6    Unbeknownst to Lay, it had violated the TCPA because the recipients of the faxes had not consented to receipt to faxes advertising property for sale. On June 9, 2009, Lay was named as a defendant in a class action for damages filed by Locklear, as class representative, under the TCPA in Madison County (the underlying action). The underlying action sought damages from Lay for alleged willful violations of the TCPA in count I and sought treble damages for the alleged sending of unsolicited faxes ($1,500 per occurrence); count II alleged conversion; and count III alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2006)).

¶ 7    Lay tendered its defense to Standard. Standard accepted under a reservation of rights. On July 13, 2009, Standard sent a reservation of rights letter to Theodore Lay and his wife, Norma Lay, at the real estate agency. The letter set forth certain defenses to coverage reserved by Standard. Specifically noted was a conflict of interest for any attorney appointed by Standard to represent Lay because the class action sought damages in the nature of a penalty or treble damages in the event the statutory violations were willful. The letter noted Standard's policies exclude coverage for intentional or nonaccidental acts. Other potential coverage defenses were also noted in the letter. First, the commercial general liability (CGL) policy issued to the agency was in regard to a single-family dwelling and several vacant lots in Girard and Nilwood under a lessor's risk-only basis and not in connection with the operation of a business. Further, Standard noted both the CGL policy and an additional business liability policy (business-owners' policy (BOP)) may not offer coverage based upon the allegations in the complaint against Lay because (1) the policies exclude coverage for an intentional or nonaccidental act and only intentional or nonaccidental conduct is alleged by the class action; (2) the class does not seek damages because of "bodily injury" as defined in the policies; (3) the class does not seek damages because of "property damage" to which insurance applies (caused by an "occurrence"); (4) the class does not seek damages because of "property damage" caused by nonintentional, accidental conduct; (5) the class does not seek damages because of "personal injury" as defined in the policies; (6) the class does not seek damages because of "advertising injury" as defined in the policies; (7) the policies exclude coverage for personal injuries arising from advertising; thus the allegations of the complaint may not be covered; (8) the policies exclude coverage for advertising injury arising out of willful violation of a penal statute by or with insured's assent, and the TCPA may constitute penal statute as contemplated by the policies; and (9) the BOP policy excludes coverage arising out of advertising services.

¶ 8    The Lays were advised they could hire an attorney of their own, at Standard's expense, to represent them due to the conflict of interest and the possible coverage defenses Standard asserts were available. They were also advised they could waive the conflicts and possible coverage defenses and accept counsel provided by Standard. On July 13, 2009, the Lays signed a waiver, agreeing to accept counsel hired by Standard to defend them in the underlying action. Attorney James Mendillo was appointed to represent the Lays in the underlying action.

¶ 9      On July 17, 2009, the underlying action was removed to the United States District Court for the Southern District of Illinois, East St. Louis Division, by counsel on behalf of Lay.

¶ 10      Later in 2009, Theodore Lay died and letters of office were issued to Norma Lay. Norma Lay, individually, as executrix of the estate of Theodore W. Lay, d/b/a/ Ted Lay Real Estate Agency, was substituted as defendant in the underlying action. Lay decided to replace counsel Mendillo with counsel of its own. On October 30, 2009, its replacement counsel of choice, Edmond H. Rees, wrote a letter to Mendillo, with a blind copy sent to counsel for Locklear and the class, explaining in great detail the conflict of interest between Standard and Lay. If Lay's conduct was found to be intentional, its actions would not be covered by insurance, but if Lay's conduct was proved to have been negligent, it would be covered by insurance. Rees asked Mendillo to withdraw from the case. On December 3, 2009, Norma and Rees, as her attorney, signed the proposed settlement agreement with Locklear. On February 20, 2010, the agreement was signed by Locklear and its attorney. All actions taken by Locklear in this case are taken as representative of the class.

¶ 11      On December 18, 2009, Rees wrote to Mendillo on behalf of Norma to dismiss him from the case and noted Norma wanted to settle the case "pursuant to the copies of documents previously forwarded to [Mendillo]." On December 29, 2009, Rees entered his appearance in the underlying case. Mendillo never withdrew from the case.

¶ 12      On April 19, 2010, the executed settlement agreement was filed with the court in the underlying action. On June 7, 2010, the district court entered an order preliminarily approving the settlement and directing notice of settlement be sent to all class members. On September 8, 2010, the court entered a judgment on final approval of the settlement for $1,739,000 plus costs. Under the agreement, Locklear agreed not to execute on any property or assets of Lay other than Lay's insurance policies and agreed to seek recovery to satisfy the judgment only from those insurance policies. Locklear agreed not to execute against Lay's noninsurance assets even if a determination is made Lay's insurance carrier did not owe coverage. Lay assigned to Locklear all of Lay's claims against and rights to payment from Standard. Further, Lay, Standard's insured, agreed to cooperate with Locklear to consummate the agreement to achieve the settlement provided and to obtain recovery.

¶ 13      In its order approving the settlement, the district court found the settlement was made in reasonable anticipation of liability; the amount was fair and reasonable; Lay sent 3,478 unsolicited faxes between June 1 and June 30, 2006; Lay believed it had the consent of the fax recipients when the faxes were sent; and Lay did not intend to injure the recipients.

¶ 14      At the time the settlement in the underlying action was agreed upon and judgment entered, this declaratory judgment action was still pending. The second amended complaint for declaratory judgment was filed on July 12, 2010.

¶ 15      On February 22, 2011, Locklear filed a motion for summary judgment seeking a declaration Standard had a duty to indemnify Lay for the settlement of the underlying action. On April 12, 2011, Standard filed its own motion for summary judgment for a declaration it did not have a duty to either defend or indemnify Lay for the settlement of the underlying action.

¶ 16      On June 14, 2011, the trial court entered an order granting Standard's motion for

-4-

summary judgment, finding Standard had no duty to defend Lay in the underlying action and, further, no "duty or obligation" to Lay in "connection with the stipulated judgment entered in [the underlying case]." The court then denied the summary judgment motion filed by Locklear. This appeal followed.

¶ 17                                    II. ANALYSIS

¶ 18      In reviewing the entry of a summary judgment, an appellate court exercises *de novo* review. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 385, 665 N.E.2d 808, 811 (1996).

¶ 19      Locklear argues all policies issued to Lay, including the CGL policy issued as lessor's risk only on a residence and some vacant lots, and a second BOP policy issued as a lessor's risk only on a four-unit apartment building, provide coverage to Lay under the allegation of the underlying action. It argues coverage is provided under both the advertising injury and property damage provisions of the policies. It further argues Lay had a right to settle the underlying action, with or without the consent of Standard, and Standard's failure to object to the settlement waived any right of consent it had to the settlement; and Standard failed to fully disclose its conflicts of interest, which prevents it from contesting coverage.

¶ 20      Standard contends there is no coverage under two out of three policies because they were for lessor's risks only and pertained to the real estate identified in those policies. It argues coverage is not provided under either the advertising injury provisions or property damage provisions of any of its policies and, if coverage was triggered by those provisions, the exclusions in the policies for rendering of professional services and intentional actions excludes coverage in this case. It further argues Lay had no right to settle without Standard's consent and Standard did not agree to the settlement. It contends its reservation of rights notification to Lay was appropriate and did not result in Standard providing a conflicted defense to Lay, estopping Standard from contesting insurance coverage now. Finally, Standard argues the statutory rate of $500 for each unauthorized fax is far in excess of actual damages incurred by any recipient and is the equivalent of punitive damages, which are uninsurable in Illinois. Standard contends it has no duty to defend or indemnify Lay.

¶ 21                 A. Failure To Fully Disclose Conflicts of Interest

¶ 22      Locklear argues Illinois law requires Standard to fully disclose conflicts of interest it has with its insured before appointing counsel to defend. The insured can then make a fully informed decision on whether to hire independent counsel. Disclosure of conflicts of interest must make a specific reference to policy defenses that may ultimately be asserted and to the conflicts of interest. *Cowan v. Insurance Co. of North America*, 22 Ill. App. 3d 883, 896-97, 318 N.E.2d 315, 326 (1974). More is required than merely stating a conflict of some sort exists and the insurer is agreeable to the insured choosing counsel to be paid by the insurer. Mention must be made of the ways in which the insurer's interest might affect or impair its defense of its insured. See *Utica Mutual Insurance Co. v. David Agency Insurance, Inc.*, 327 F. Supp. 2d 922, 931 (N.D. Ill. 2004). Locklear argues Standard merely announced one conflict related to the nature of the damages existed, the fact it was defending under a reservation of rights, and which attorney it was appointing.

¶ 23    Locklear contends Standard is estopped from raising coverage defenses and denying coverage as a matter of law for not describing all conflicts of interest. See *Williams v. American Country Insurance Co.*, 359 Ill. App. 3d 128, 140, 833 N.E.2d 971, 981 (2005) (insurer failed to disclose conflict of interest to insured and court found, absent full disclosure and consent to representation, insured was entitled to assume control of own defense and insurer was obligated to pay for independent counsel).

¶ 24    Locklear contends Standard's reservation of rights letter was not sufficient because it did not set forth all of its conflict of interests. As noted above, Standard specifically referred to the conflict existing due to allegations in the underlying complaint of intentional acts and willful acts. It noted these were in the nature of a penalty as was the provision in the TCPA for treble damages. It further noted its policies did not cover intentional or nonaccidental acts. The conflicts specifically at issue here were explained to Lay.

¶ 25    Locklear argues Lay never consented to a conflict after full disclosure and, therefore, Standard is barred from contesting coverage. Lay did sign the written waiver to the conflicts presented under Standard's policy. The reservation of rights letter also included a lengthy list of Standard's policy defenses it planned to assert, and it also included the provision it is not waiving any defenses which may later come to light.

¶ 26    We find Standard's reservation of rights letter contained the disclosures necessary to avoid being estopped from raising policy coverage issues here. It also listed all of the coverage questions it raises here.

¶ 27              B. TCPA Damages in the Nature of Punitive Damages

¶ 28    We note Standard's arguments as to only one of its three insurance policies being applicable in this instance may have merit. Locklear's arguments as to coverage are reasonable, but Standard has made a number of colorable and interesting arguments against them. We need not discuss them here. We find Standard's argument, first raised by Standard in the trial court in the declaratory judgment action, and included as an argument in its motion for summary judgment in this action, that the damages under the TCPA are in the nature of punitive damages and not insurable in Illinois, to be dispositive.

¶ 29    The TCPA makes it unlawful for any person within the United States to use any fax machine, computer or other device to send unsolicited advertisements to another fax machine. 47 U.S.C. § 227(b)(1)(C) (2006). The TCPA creates a private right of action permitting recipients of unwanted fax advertisements to seek injunctive relief and damages and treble damages if a court finds the sender acted "willfully or knowingly." 47 U.S.C. § 227(b)(3) (2006). The TCPA further provides a plaintiff may bring an action for actual monetary loss from a violation of the TCPA or to receive $500 for each such violation, whichever is greater. Treble damages are available when a court, in its discretion, finds the defendant willfully or knowingly violated the statute. 47 U.S.C. § 227(b)(3) (2006).

¶ 30    The TCPA is a strict liability statute. See *Park University Enterprises, Inc. v. American Casualty Co.*, 314 F. Supp. 2d 1094, 1103 (D. Kan. 2004). Standard argues because the $500 statutory rate in the TCPA for each unauthorized fax is far in excess of actual damages, it is the equivalent of punitive damages. Standard contends any amount of damage in excess of

-6-

actual damages constitutes punitive damages, not insurable as a matter of Illinois law and public policy, and not recoverable from an insurer. *Bernier v. Burris*, 113 Ill. 2d 219, 246, 497 N.E.2d 763, 776 (1986); *Beaver v. Country Mutual Insurance Co.*, 95 Ill. App. 3d 1122, 1125, 420 N.E.2d 1058, 1061 (1981). Punitive damages are intended to punish rather than compensate. *Bernier*, 113 Ill. 2d at 246, 497 N.E.2d at 776. The *Beaver* court notes not only are punitive damages punishment, but they also operate as a deterrent, and if an insured were allowed to shift the burden of paying these damages to its insurer, punitive damages would serve no useful purpose. *Beaver*, 95 Ill. 2d at 1124, 420 N.E.2d at 1060 (citing *Northwestern National Casualty Co. v. McNulty*, 307 F.2d 432, 440-41 (5th Cir. 1962)).

¶ 31 The purpose of the TCPA is to deter future sending of unwanted fax transmissions by those sending the faxes and deterring others from doing the same by shifting the cost and imposing penalties on those sending the unwanted fax transmissions. The actual cost to a recipient of unwanted faxes is far below $500. It would amount to the cost of a sheet of paper and some toner, as well as the brief time involved in an employee taking the unwanted fax from the fax machine. The cost to the sender of an unwanted fax is far in excess of the cost to the recipient. It is a penalty to the sender.

¶ 32 The purposes of punitive damages have been defined as (1) to act as retribution against a defendant; (2) to deter a defendant from committing similar wrongs in the future; and (3) to deter others from similar conduct. *Gambino v. Boulevard Mortgage Corp.*, 398 Ill. App. 3d 21, 68, 922 N.E.2d 380, 423 (2009). The second two purposes are applicable in this instance. Further, damages in excess of actual damages suffered by Locklear and the other class members would be a windfall, which is contrary to the purpose of compensatory damages. *Id.* at 61, 922 N.E.2d at 417.

¶ 33 Shifting responsibility for payment of damages beyond actual damages frustrates the TCPA's purpose of deterring and preventing the sending of unwanted faxes. There is no incentive for a current or future fax sender to comply with the TCPA if a violation is covered by liability insurance.

¶ 34 There do not seem to be any Illinois cases holding damages in TCPA cases are uninsurable on public policy grounds because they resemble punitive damages. One case, *Italia Foods, Inc. v. Sun Tours, Inc.*, 399 Ill. App. 3d 1038, 1066-68, 927 N.E.2d 682, 705-06 (2010), found the TCPA was not a penal statute for purposes of the assignability of claims based on it. However, the case was vacated on other grounds by *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, 2011 WL 2163718. Locklear tries to argue our supreme court had no criticism of the appellate court's finding TCPA damages were not "penal." However, the supreme court, while vacating the judgment on other grounds, noted the issue in regard to the assignability of TCPA claims was moot in view of its decision and specifically noted the appellate court's *entire* discussion of the nature of TCPA damages was unnecessary. The supreme court did not "fail to criticize the appellate court's reasoning." It found the court had no business reasoning on that issue at all. *Italia Foods, Inc.*, 2011 IL 110350, ¶ 42, 2011 WL 2163718, at *9.

¶ 35 Locklear cites cases from other states and federal jurisdictions, not including Illinois, which have found the TCPA to be a remedial statute and not a penal statute. See *Motorists*

*Mutual Insurance Co. v. Dandy-Jim, Inc.*, 2009-Ohio-2270, ¶ 34, 912 N.E.2d 659. Some of them have noted one of the purposes of the TCPA is to redress harms to the persons forced to bear the costs of receiving unsolicited faxes. See *Destination Ventures, Ltd. v. Federal Communications Comm'n*, 844 F. Supp. 632, 637 (D. Or. 1994). We are not bound by decisions from other jurisdictions, and some cases from other jurisdictions have held a claim under the TCPA for $500 in liquidated damages per violation *is* a penalty. See *Kruse v. McKenna*, 178 P.3d 1198, 1201 (Colo. 2008) (*en banc*). While redressing harms to fax recipients is one purpose of the TCPA, deterring fax senders from sending future faxes is also a purpose of the TCPA. The statutorily set price of a violation, $500 per occurrence, does far more than redress the harms suffered by the fax recipient. The cost value of its harms is minuscule compared to the amount of damages imposed by the statute. Each of us can envision creative ways to redress the annoyance of unsolicited faxes, texts, calls, and e-mail messages, but that redress is likely to be outside the bounds of the law.

¶ 36    In Illinois, a "penalty" has been defined as punishment for the performance of an unlawful act or nonperformance of an act. *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 12, 919 N.E.2d 300, 307 (2009) (quoting *Hoffmann v. Clark*, 69 Ill. 2d 402, 429, 372 N.E.2d 74, 87 (1977)). A statutory penalty must (1) impose automatic liability for a violation of its terms; (2) set forth a predetermined amount of damages; and (3) impose damages without regard to the actual damages suffered by the plaintiff. *McDonald's Corp. v. Levine*, 108 Ill. App. 3d 732, 738, 439 N.E.2d 475, 480 (1982). A statute is remedial where it imposes liability only when actual damage results from a violation and liability is contingent on damage proven by the plaintiff; while under a penal statute, liability is not contingent but imposed automatically when a violation of the statute is established. *Id.* The TCPA has been held to be a strict liability statute. The "actual" damages incurred by a violation of the TCPA are more in the nature of an irksome nuisance, and liability is not predicated on proving them. In fact, in the event of minuscule damages, the TCPA provides for a finding of the amount of damage or $500 per occurrence, whichever is greater. Actual damages to any one individual are likely to be small. Five hundred dollars then becomes a predetermined amount of damages and is clearly not meant to compensate for any actual harm.

¶ 37    We find the $500 in liquidated damages provided in the TCPA is a penalty and is in the nature of punitive damages. They are not insurable as a matter of Illinois law and public policy and are not recoverable from Standard. The trial court's judgment dismissing Locklear's motion for summary judgment and granting Standard's motion for summary judgment was correct.


¶ 38                                III. CONCLUSION
¶ 39    For the foregoing reasons, we affirm the trial court's judgment.


¶ 40    Affirmed.