# ILLINOIS OFFICIAL REPORTS

## Appellate Court

---

### *Standard Mutual Insurance Co. v. Lay*, 2014 IL App (4th) 110527-B

---

| | |
|---|---|
| Appellate Court Caption | STANDARD MUTUAL INSURANCE COMPANY, Plaintiff-Appellee, v. NORMA LAY, Individually and as Executrix of the Estate of THEODORE W. LAY, d/b/a TED LAY REAL ESTATE AGENCY, Defendant, and LOCKLEAR ELECTRIC, INC., an Illinois Corporation, Defendant-Appellant. |
| District & No. | Fourth District<br>Docket No. 4-11-0527 |
| Rule 23 Order filed | November 25, 2013 |
| Rule 23 Order withdrawn | January 23, 2014 |
| Opinion filed | January 23, 2014 |
| Held<br>(*Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.*) | The insurer of the owners of a real estate agency that clearly violated the Telephone Consumer Protection Act by faxing an advertisement about a property listed for sale to recipients that had not agreed to receive the messages was responsible for providing coverage, where the policies issued by the insurer covered the alleged damages, the claim was not excluded by the professional services exclusion in the policies or the exclusion applicable to intentional conduct, sending the faxes violated the recipients' right to privacy and fell under the "personal and advertising injury" provision, and the insurer gave up the right to object to the insureds' settlement of the underlying claim when it allowed them to control the defense. |
| Decision Under Review | Appeal from the Circuit Court of Macoupin County, No. 09-MR-32; the Hon. Patrick J. Londrigan, Judge, presiding. |

| Judgment | Reversed. |
|---|---|
| Counsel on Appeal | Phillip A. Bock, of Bock & Hatch, LLC, of Chicago, Michael T. Reagan, of Law Office of Michael T. Reagan, of Ottawa, Brian J. Wanca and David M. Oppenheim, both of Anderson & Wanca, of Rolling Meadows, and Paul W. Bloomer, of Denby, Meno, Bloomer & Denby, of Carlinville, for appellant. |
| | Robert Marc Chemers and Peter G. Syregelas, both of Pretzel & Stouffer, Chtrd., of Chicago, for appellee. |
| Panel | JUSTICE KNECHT delivered the judgment of the court, with opinion. Justices Pope and Steigmann concurred in the judgment and opinion. |

## OPINION

¶ 1    In June 2006, Theodore W. Lay, d/b/a Ted Lay Real Estate Agency (Lay), faxed an advertisement in regard to the sale of a particular property to Locklear Electric, Inc. (Locklear), and others. Because the facsimile message (fax) recipients had not given permission to receive these messages, Lay violated the Telephone Consumer Protection Act of 1991 (Telephone Act) (47 U.S.C. § 227 (2006)). The statute imposes a penalty in the amount of $500 for each fax sent. Lay was sued in a class action with Locklear as the class representative. Defense of the claim was tendered to Standard Mutual Insurance Company (Standard), Lay's insurance carrier, which undertook the defense under a reservation of rights. Standard also filed this declaratory judgment action to determine its coverage under its policies.

¶ 2    The Telephone Act claim against Lay was a potential multimillion dollar claim that would bankrupt the agency if a verdict were entered against it and it was not covered by insurance. Lay opted for independent counsel and then settled with the class action plaintiff for $1,739,000 plus costs (the full amount sought in the class action complaint) and assigned its rights against Standard to the class in exchange for a promise by the class not to execute on any of Lay's property or assets other than the insurance policies with Standard.

¶ 3    The settlement was approved by the federal district court and Locklear, the class representative, became actively involved in this declaratory judgment action filed by Standard in Macoupin County. Both Standard and Locklear ultimately filed for summary judgment in the declaratory judgment. After extensive briefing, the trial court denied Locklear's motion and granted that filed by Standard. Locklear appealed this judgment. We

affirmed. *Standard Mutual Insurance Co. v. Lay*, 2012 IL App (4th) 110527, 975 N.E.2d 1099. Our supreme court allowed Locklear's petition for leave to appeal. That court affirmed our judgment in part and reversed in part and remanded the cause to us for further proceedings. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, 989 N.E.2d 591. We reverse the trial court.

¶ 4                                    I. BACKGROUND

¶ 5        Lay was a small real estate agency located in Girard, Macoupin County, Illinois. Lay hired a fax broadcaster to assist in his advertising effort in selling a property listing. The fax broadcaster (Business 2 Business Services) offered a "blast fax" service to Lay where fax advertisements were sent to thousands of fax machines cheaply. The broadcaster represented to Lay the recipients of the faxes would be only entities that had consented to receiving fax messages such as the one contemplated by Lay. Lay agreed and on June 13, 2006, the faxes were sent by the broadcaster to approximately 5,000 fax numbers on behalf of Lay. On June 13, 2006, Locklear received one of these unsolicited faxes.

¶ 6        Unbeknownst to Lay, it violated the Telephone Act because the recipients of the faxes actually had not consented to receipt of faxes advertising property for sale. On June 9, 2009, Lay was named as a defendant in a class action for damages filed by Locklear, as class representative, under the Telephone Act in Madison County (the underlying action). The underlying action sought damages from Lay for alleged willful violations of the Telephone Act in count I and sought treble damages for the alleged sending of unsolicited faxes ($1,500 per occurrence); count II alleged conversion; and count III alleged violations of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2006)).

¶ 7        Lay tendered its defense to Standard. Standard accepted under a reservation of rights. On July 13, 2009, Standard sent a reservation of rights letter to Theodore Lay and his wife, Norma Lay, at the real estate agency. The letter set forth certain defenses to coverage reserved by Standard. The letter noted a conflict of interest for any attorney appointed by Standard to represent Lay because the class action sought damages in the nature of a penalty or treble damages in the event the statutory violations were willful. The letter noted Standard's policies exclude coverage for intentional or nonaccidental acts. Other potential coverage defenses were also noted in the letter. First, the commercial general liability (general liability) policy issued to the agency was in regard to a single-family dwelling and several vacant lots in Girard and Nilwood under a lessor's risk-only basis and not in connection with the operation of a business. Standard noted both the general liability policy and an additional business liability policy (business-owners' policy (business policy)) may not offer coverage based upon the allegations in the complaint against Lay because (1) the policies exclude coverage for an intentional or nonaccidental act and only intentional or nonaccidental conduct is alleged by the class action; (2) the class did not seek damages because of "bodily injury" as defined in the policies; (3) the class did not seek damages because of "property damage" to which insurance applies (caused by an "occurrence"); (4) the class did not seek damages because of "property damage" caused by nonintentional, accidental conduct; (5) the class did not seek damages because of "personal injury" as

-3-

defined in the policies; (6) the class did not seek damages because of "advertising injury" as defined in the policies; (7) the policies exclude coverage for personal injuries arising from advertising, so the allegations of the complaint may not be covered; (8) the policies exclude coverage for advertising injury arising out of willful violation of a penal statute by or with insured's assent and Telephone Act may constitute a penal statute as contemplated by the policies; and (9) the business policy excludes coverage arising out of advertising services.

¶ 8    The Lays were advised they could hire an attorney of their own, at Standard's expense, to represent them due to the conflict of interest and the possible coverage defenses Standard asserts were available. They were also advised they could waive the conflicts and possible coverage defenses and accept counsel provided by Standard. On July 13, 2009, the Lays signed a waiver, agreeing to accept counsel hired by Standard to defend them in the underlying action. Attorney James Mendillo was assigned to represent the Lays in the underlying action.

¶ 9    On July 17, 2009, the underlying action was removed to the United States District Court for the Southern District of Illinois, East St. Louis Division, by counsel on behalf of Lay.

¶ 10    Later in 2009, Ted Lay died and letters of office were issued to Norma Lay. Norma Lay, individually, as executrix of the estate of Theodore W. Lay, d/b/a Ted Lay Real Estate Agency, was substituted as defendant in the underlying action. Norma Lay decided to replace counsel Mendillo. On October 30, 2009, replacement counsel of choice, Edmond H. Rees, wrote a letter to Mendillo, with a blind copy sent to counsel for Locklear and the class, explaining in great detail the conflict of interest between Standard and Lay. If Lay's conduct was found to be intentional, its actions would not be covered by insurance, but if Lay's conduct was proved to have been negligent, it would be covered by insurance. Rees asked Mendillo to withdraw from the case. On December 3, 2009, Norma and Rees, as her attorney, signed the proposed settlement agreement with Locklear. On February 20, 2010, the agreement was signed by Locklear and its attorney. All actions taken by Locklear in this case were taken as representative of the class.

¶ 11    On December 18, 2009, Rees wrote Mendillo on behalf of Norma to dismiss him from the case and noted Norma wanted to settle the case "pursuant to the copies of documents previously forwarded to [Mendillo]." On December 29, 2009, Rees entered his appearance in the underlying case. Mendillo never withdrew.

¶ 12    On April 19, 2010, the executed settlement agreement was filed with the court in the underlying action. On September 8, 2010, the court entered a judgment on final approval of the settlement for $1,739,000 plus costs. Under the agreement, Locklear agreed not to execute on any property or assets of Lay other than Lay's insurance policies and agreed to seek recovery to satisfy the judgment only from those insurance policies. Locklear agreed not to execute against Lay's noninsurance assets even if a determination is made Lay's insurance carrier did not owe coverage. Norma Lay assigned to Locklear all of Lay's claims against and rights to payment from Standard. Lay agreed to cooperate with Locklear to consummate the agreement to achieve the settlement provided and to obtain recovery.

¶ 13    In its order approving the settlement, the district court found the settlement was made in reasonable anticipation of liability; the amount was fair and reasonable; Lay sent 3,478

unsolicited faxes between June 1 and June 30, 2006; Lay believed it had the consent of the fax recipients when the faxes were sent; and Lay did not intend to injure the recipients.

¶ 14 At the time the settlement in the underlying action was agreed upon and judgment entered, this declaratory judgment action was still pending. The second amended complaint for declaratory judgment was filed on July 12, 2010.

¶ 15 On February 22, 2011, Locklear filed a motion for summary judgment seeking a declaration Standard had a duty to indemnify Lay for the settlement of the underlying action. On April 12, 2011, Standard filed its own motion for summary judgment for a declaration it did not have a duty to either defend or indemnify Lay for the settlement of the underlying action.

¶ 16 On June 14, 2011, the trial court entered an order granting Standard's motion for summary judgment, finding Standard had no duty to defend Lay in the underlying action and, further, no "duty or obligation" to Lay in "connection with the stipulated judgment entered in [the underlying case]." The court then denied the summary judgment motion filed by Locklear. Locklear's appeal to this court followed.

¶ 17 On April 20, 2012, this court affirmed the trial court's grant of summary judgment to Standard. We held Standard's reservation of rights letter contained the disclosures necessary to avoid being estopped from raising policy coverage issues. We also held statutory damages provided under the Telephone Act in the amount of $500 for each occurrence of sending an unsolicited fax message (47 U.S.C. § 227 (2006)) is in the nature of punitive damages because it is far in excess of actual compensation for injury caused to the recipient of the fax message. The damages are not insurable because, under Illinois law, punitive damages are not insurable. Locklear appealed to our supreme court.

¶ 18 On May 23, 2013, the supreme court issued its opinion (*Lay*, 2013 IL 114617, 989 N.E.2d 591) affirming our holding the reservation of rights letter issued by Standard was satisfactory to allow it to raise coverage issues (*Lay*, 2013 IL 114617, ¶ 22, 989 N.E.2d 591) and reversing our holding damages provided under the Telephone Act were punitive in nature and uninsurable under Illinois law (*Lay*, 2013 IL 114617, ¶ 33, 989 N.E.2d 591). The court then remanded this case for consideration of the other issues raised by Locklear.

¶ 19 II. ANALYSIS

¶ 20 In reviewing the entry of a summary judgment, an appellate court exercises *de novo* review. *Barnett v. Zion Park District*, 171 Ill. 2d 378, 385, 665 N.E.2d 808, 811 (1996).

¶ 21 Locklear argues all policies issued to Lay, including the general liability policy issued as lessor's risk only on a residence and some vacant lots and a second business policy issued as a lessor's risk only on a four-unit apartment building, provide coverage to Lay under the allegations of the underlying action. It argues coverage is provided under both the advertising injury and property damage provisions of the policies. It further argues Norma Lay had a right to settle the underlying action, with or without the consent of Standard, and Standard's failure to object to the settlement waived any right of consent to the settlement.

¶ 22 Standard contends there is no coverage under two out of three policies because they were

for lessor's risks only and pertained to the real estate identified in those policies. It argues coverage is not provided under either the advertising injury provisions or property damage provisions of any of its policies and, if coverage was triggered by those provisions, the exclusions in the policies for rendering of professional services and intentional actions excludes coverage in this case. It further argues Lay had no right to settle without Standard's consent and Standard did not agree to the settlement.

¶ 23    We find Standard's policies issued to Lay cover the damages alleged here, but note the purpose of the Telephone Act is "to address telemarketing abuses attributable to the use of automated telephone calls to devices including telephones, cellular telephones, and fax machines." *Lay*, 2013 IL 114617, ¶ 27, 989 N.E.2d 591. By allowing liability for telemarketing abuses to be covered by insurance, the company responsible for the abuses, in this case Lay, has no incentive to stop the abuses from occurring in the future and the purpose of the Telephone Act is unfulfilled.

¶ 24            A. General Liability Policy and Business Policy for Lessor's Risk

¶ 25    One of the business policies at issue here specifically involves coverage for the operation of Lay's real estate business. We find it provides coverage for the "blast fax" incident in this case. The other two policies refer to various rental premises or vacant lots owned by Lay. However, the policies do not contain "designated premises" limitations, which would attempt to limit their application to liability coverage for activities arising out of the use of those premises alone. The only reference to those premises in the policies is in the descriptive sections of the policy declarations. In the cases cited by Standard for the proposition these policies do not cover liability for faxes in support of Lay's real estate sales business, the policies included provisions limiting general liability coverage to injuries arising out of ownership of the premises listed in the declaration. The policies in this case do not contain those provisions, and we cannot find those policies do not provide coverage for the injuries caused by the "blast fax" in this case on that ground.

¶ 26            B. "Professional Services" Exclusion Not Applicable

¶ 27    Standard contends even if there is coverage under "advertising injury," the rendering or failure to render any professional service, including "advertising services," is specifically excluded under the policy. Standard argues because a real estate agency is a "profession" under Illinois law, requiring licensure, its operation is a "professional service." The fax at issue provides information regarding commercial property for sale. Standard argues it should be considered as rendering of a professional service by Lay's agency. Any damage alleged to be incurred is excluded from coverage by the professional services exclusion of the policies.

¶ 28    Lay was a real estate agency, not an advertising company. The claim against Lay was not made because Lay incorrectly performed real estate services. Instead, the claim was based on Lay's tortious conduct ancillary to the performance of real estate services. Standard's argument has been rejected by this court in *Westport Insurance Corp. v. Jackson National Life Insurance Co.*, 387 Ill. App. 3d 408, 414, 900 N.E.2d 377, 381 (2008) (advertisement

-6-

describing features of an insurance plan did not amount to rendering professional advertising service by an insurance professional). Following Standard's argument an insured advertising its business is an excluded professional service would read the coverage of advertising injuries entirely out of the policies despite the fact such coverage is specifically available under the policies.

¶ 29                              C. Property Damage Coverage

¶ 30     Standard's policies define property damage as "injury to tangible property." Locklear alleged Lay "knew or should have known that its misappropriation of paper, toner and employee time was wrongful and without authorization." Lay believed the fax broadcaster when it told Lay it had the consent of the fax recipients. Standard argues Lay's actions were intentional and its policies exclude coverage for intentional actions of the insured that injure others.

¶ 31     While Lay's actions in sending the fax were intentional, it thought it had authorization to send faxes to the particular recipients. Thus, it did not intend to injure anyone by sending the fax. While intentional actions are not covered by Standard's policies, negligent conduct, *i.e.*, Lay knew or should have known its actions in sending fax ads were "wrongful and without authorization," are covered. See *Insurance Corp. of Hanover v. Shelborne Associates*, 389 Ill. App. 3d 795, 800-03, 905 N.E.2d 976, 982-85 (2009).

¶ 32                              D. Advertising Injury Coverage

¶ 33     Locklear argues coverage lies for fax advertisements under Standard's "personal and advertising injury" provision. In *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 860 N.E.2d 307 (2006), the court evaluated the same claims and same policy language as were found in this case. Allegations of advertising injury due to invasion of privacy were found to be covered by the insurance policy where the definition of privacy included the right to seclusion or being left alone. Since faxes were sent without the permission of the recipient, they violated the fax recipient's right to privacy. *Id.* at 368-69, 860 N.E.2d at 317. The fax recipient in *Swiderski* was not a corporation. However, claims by corporations are no different for coverage purposes from claims by an unincorporated business as in *Swiderski*. See *Pekin Insurance Co. v. XData Solutions, Inc.*, 2011 IL App (1st) 102769, ¶ 18, 958 N.E.2d 397.

¶ 34                              E. Control of Settlement

¶ 35     An insurer, being charged with a duty to its insured, controls the insured's defense. *Illinois Masonic Medical Center v. Turegum Insurance Co.*, 168 Ill. App. 3d 158, 163, 522 N.E.2d 611, 613 (1988). Where a conflict exists, an insurer's obligation to defend is satisfied by reimbursing the insured for the cost of defense provided by independent counsel selected by the insured. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 198-99, 355 N.E.2d 24, 31 (1976). Under these circumstances, the insured is entitled to assume control of the defense. *Id.* When an insurer surrenders control of the defense, it also surrenders its right to

control the settlement of the action and to rely on a policy provision requiring consent to settle. *Myoda Computer Center, Inc. v. American Family Mutual Insurance Co.*, 389 Ill. App. 3d 419, 425, 909 N.E.2d 214, 220 (2009). Standard had no right to require Lay to obtain permission to settle the underlying suit or to object to it itself.

¶ 36 Standard does not present any evidence it was prejudiced by the settlement. The amount was supported by simple math. Lay's liability under the Telephone Act was clear. Absent the settlement, the result would have been the same. Standard had already filed this declaratory judgment action contesting coverage and Standard cannot avoid its responsibilities under its policies.

¶ 37 III. CONCLUSION

¶ 38 We reverse the trial court's judgment.

¶ 39 Reversed.