# ILLINOIS OFFICIAL REPORTS

## Supreme Court

---

### *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617

---

| | |
|---|---|
| Caption in Supreme Court: | STANDARD MUTUAL INSURANCE COMPANY, Appellee, v. NORMA LAY, Indiv. and as Ex'r of the Estate of Theodore W. Lay, d/b/a Ted Lay Real Estate Agency, *et al.*, Appellants. |
| Docket No. | 114617 |
| Filed | May 23, 2013 |
| Held *(Note: This syllabus constitutes no part of the opinion of the court but has been prepared by the Reporter of Decisions for the convenience of the reader.)* | Where the federal Telephone Consumer Protection Act, in prohibiting the sending of unsolicited faxes, provided for liquidated damages of $500 per violation, and a class action resulted in a settlement for $1,737,500 plus costs, to be paid solely from insurance, the Act was held to be a remedial statute designed to grant remedies for the protection of rights, with the award being remedial rather than uninsurable as punitive. |
| Decision Under Review | Appeal from the Appellate Court for the Fourth District; heard in that court on appeal from the Circuit Court of Macoupin County, the Hon. Patrick J. Londrigan, Judge, presiding. |
| Judgment | Affirmed in part and reversed in part. Cause remanded. |

| | |
|---|---|
| Counsel on Appeal | Michael T. Reagan, of Ottawa, Brian J. Wanca and David Oppenheim, of Anderson + Wanca, of Rolling Meadows, and Phillip A. Bock and Robert M. Hatch, of Bock & Hatch, LLC, of Chicago, appellants. |
| | Robert Marc Chemers and Peter G. Syregelas, of Pretzel & Stouffer, Chrtd., of Chicago, for appellee. |
| Justices | JUSTICE FREEMAN delivered the judgment of the court, with opinion. |
| | Chief Justice Kilbride and Justices Thomas, Garman, Karmeier, Burke, and Theis concurred in the judgment and opinion. |

## OPINION

¶ 1    Locklear Electric, Inc. (Locklear), brought an action against Ted Lay Real Estate Agency (Lay) pursuant to the Telephone Consumer Protection Act of 1991 (TCPA) (47 U.S.C. § 227(b)(3) (2006)), which resulted in a court-approved settlement. Lay's insurer, Standard Mutual Insurance Company (Standard), filed a complaint for declaratory relief against Lay and Locklear in the circuit court of Macoupin County. Standard sought a determination of Lay's insurance coverage for the underlying lawsuit and settlement. Finding that Lay was not covered, the circuit court granted summary judgment in favor of Standard.

¶ 2    The appellate court affirmed. 2012 IL App (4th) 110527. This court allowed Locklear's petition for leave to appeal. Ill. S. Ct. R. 315 (eff. Feb. 26, 2010). We now affirm the judgment of the appellate court in part and reverse in part, and remand the cause to the appellate court for further proceedings.

¶ 3                                   I. BACKGROUND

¶ 4    In 2006, Lay was a real estate agency located in Girard, Macoupin County, Illinois. Lay contacted Business to Business Solutions (Business to Business) regarding facsimile message (fax) advertising. Business to Business offered a "blast fax" service, in which it sends fax advertisements to thousands of fax machines cheaply. Business to Business represented to Lay that it had a list of people and entities who wished to receive information by fax. Lay hired Business to Business, and together they created an advertisement for the sale of a car wash, which included Lay's contact information. During June 2006, Business to Business transmitted the advertisement to approximately 5,000 fax numbers with Illinois area codes 217 and 618. Unbeknownst to Lay, the people and entities on Business to Business' fax list did not consent to receive fax advertisements. On June 13, 2006, Locklear received one of these unsolicited faxes.

¶ 5                                    A. Underlying Class Action and Settlement

¶ 6        In June 2009, Locklear brought a class action against Lay in the circuit court of Madison County alleging violations of the TCPA.[1] Locklear represented a putative class of 3,478 people and entities to whom Lay faxed the advertisement. Locklear and the other plaintiffs sought the TCPA-prescribed damages of $500 per violation and injunctive relief (see 47 U.S.C. § 227(b)(3) (2006)).

¶ 7        Lay tendered its defense to its insurer, Standard, which had issued to Lay a commercial general liability insurance policy and a primary businessowners liability insurance policy. In a letter dated July 13, 2009, Standard informed Lay that the insurance policies may not cover the conduct alleged in the class action complaint. For example, according to Standard, the TCPA "may constitute a penal statute," and the policies excluded coverage for willful violations of penal statutes. Also, according to Standard, the policies excluded coverage for the allegations of the complaint based on the specific language of several policy provisions. For these and several other reasons, Standard agreed to defend Lay in the underlying action subject to a reservation of rights. Standard concluded that a conflict of interest existed for any attorney that Standard would retain to represent Lay. Due to this conflict, Standard advised that Lay could: (1) choose its own defense attorney at Standard's expense; or (2) waive the conflict of interest and Standard's possible coverage defenses, and accept counsel provided by Standard. On that same date, Lay signed a waiver agreeing to accept the attorney hired by Standard, James Mendillo, to defend Lay in the underlying action.

¶ 8        In July 2009, Mendillo removed the underlying action to the United States District Court for the Southern District of Illinois. Lay subsequently retained Edmond H. Rees as its own chosen counsel.[2] In a letter dated October 30, 2009, Rees detailed the conflict of interest between Standard and Lay, and asked Mendillo to withdraw from the case. On December 3, 2009, Lay and Rees signed a proposed settlement of the class action. Rees thereafter informed Mendillo that Lay had decided to dismiss Mendillo and settle the case. Rees subsequently entered his appearance on behalf of Lay. Nevertheless, Mendillo continued to attend all subsequent court hearings. Mendillo recognized Rees as Lay's "personal counsel," and acknowledged that he was protecting the interests of Standard.

¶ 9        On September 18, 2010, the federal district court entered a final order approving the class certification and settlement. The judgment against Lay was for $1,737,500 plus costs.[3]

---

[1]The complaint also alleged a violation of the Illinois Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/2 (West 2006)) and common law conversion.

[2]Theodore Lay died while the underlying action was pending. On October 1, 2009, letters of office were issued to Norma Lay, who, individually and as executor of the estate of Theodore W. Lay, doing business as Ted Lay Real Estate Agency, was substituted as defendant.

[3]The settlement agreement provided for $1,739,000 in damages, based on the $500 TCPA-prescribed damages for each of the 3,478 class members. However, the class action pleadings indicate that two persons opted out of the class and the fax broadcaster was excluded.

Pursuant to the settlement agreement, Locklear would seek satisfaction of the judgment only from Lay's insurance policies; Locklear would not now or ever execute against Lay's noninsurance assets, even if a determination is made that Lay's insurer did not owe coverage. This provision was expressly referenced and incorporated into the final order. Lay assigned to Locklear all of Lay's claims against, and rights to payment from, Standard.

¶ 10                          B. Instant Declaratory Judgment Action

¶ 11    When Lay accepted Standard's representation in the underlying action, subject to Standard's reservation of rights, Standard filed a complaint for declaratory relief against Lay and Locklear in the circuit court of Macoupin County. In July 2010, Standard filed the instant second amended complaint. The eight-count complaint sought a declaration that Standard had no duty to defend or indemnify Lay. Several counts alleged that Lay was not covered pursuant to various specific insurance policy provisions. In count V, Standard alleged that TCPA-prescribed damages of $500 per violation constitute punitive damages, which "are not insurable as a matter of Illinois law and public policy." In counts VI and VII, Standard alleged that it had no duty to indemnify Lay because, *inter alia*, Lay did not cooperate with Standard, but rather entered into the settlement agreement with Locklear without Standard's consent. In count VIII, Standard sought damages in the amount of the underlying judgment, which Standard characterized as "insurance coverage to which [Lay and Locklear] were not entitled."

¶ 12    In October 2010, Locklear filed an answer and amended counterclaim. Locklear sought a declaration that the insurance policies required Standard to defend and indemnify Lay for its alleged conduct in the underlying action, and that the insurance policies covered Lay for the damages awarded in the underlying action.

¶ 13    Standard and Locklear filed cross-motions for summary judgment. Finding that Lay was not entitled to coverage, the circuit court granted summary judgment on Standard's complaint, and denied summary judgment on Locklear's counterclaim. The appellate court affirmed. 2012 IL App (4th) 110527. Locklear appeals to this court.

¶ 14                                    II. ANALYSIS

¶ 15    This matter is before us on the grant of summary judgment in favor of Standard. Summary judgment is appropriate only where "the pleadings, depositions, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." 735 ILCS 5/2-1005(c) (West 2010). A circuit court's entry of summary judgment is reviewed *de novo*. *Progressive Universal Insurance Co. of Illinois v. Liberty Mutual Fire Insurance Co.*, 215 Ill. 2d 121, 128 (2005); *Outboard Marine Corp. v. Liberty Mutual Insurance Co.*, 154 Ill. 2d 90, 102 (1992).

¶ 16    The appellate court addressed only two issues. First, the court concluded that Standard was not estopped from raising policy coverage defenses. 2012 IL App (4th) 110527, ¶ 26. Second, the court concluded that the TCPA-prescribed damages of $500 per violation

constitute punitive damages, which "are not insurable as a matter of Illinois law and public policy and are not recoverable from Standard." *Id*. ¶ 37. The court did not address Locklear's additional arguments pertaining to coverage under Lay's insurance policies. *Id*. ¶ 28. Locklear assigns error to both of these conclusions.

¶ 17                                             A. Estoppel

¶ 18    Locklear contends that Standard is estopped from asserting defenses to its insurance policy coverage. Locklear specifically argues that Standard's July 13, 2009, reservation-of-rights letter did not adequately inform Lay of potential coverage defenses and conflicts of interest. According to Locklear, a sufficient letter would have enabled Lay to have made a fully informed decision at the outset of the underlying case as to whether to hire independent counsel. We disagree.

¶ 19    Generally, where a complaint against an insured alleges facts within or potentially within the coverage of the insurance policy, and when the insurer takes the position that the policy does not cover the complaint, the insurer must: (1) defend the suit under a reservation of rights; or (2) seek a declaratory judgment that there is no coverage. If the insurer fails to take either of these actions, it will be estopped from later raising policy defenses to coverage. *State Farm Fire & Casualty Co. v. Martin*, 186 Ill. 2d 367, 371 (1999); *Clemmons v. Travelers Insurance Co.*, 88 Ill. 2d 469, 475 (1981). However, where an insurer assumes an insured's defense without a reservation of rights, the insurer will not be equitably estopped from denying coverage unless prejudice exists. Prejudice will not be presumed from the insurer's mere entry of appearance and assumption of the defense. Rather, prejudice will be found if the insurer's assumption of the defense induces the insured to surrender her right to control her own defense. *Maryland Casualty Co. v. Peppers*, 64 Ill. 2d 187, 195-96 (1976); see *United Farm Family Mutual Insurance Co. v. Frye*, 381 Ill. App. 3d 960, 969-70 (2008) (collecting cases).

¶ 20    When an insurer defends a claim against its insured under a sufficient reservation of rights, the insured then can intelligently choose between retaining her own counsel, or accepting defense counsel provided by the insurer, and cannot so easily claim that it was prejudiced by the insurer's conflict of interest. Bare notice of a reservation of rights is insufficient. The reservation of rights must specifically refer to the policy defense that may be asserted and to the potential conflict of interest. See *Royal Insurance Co. v. Process Design Associates, Inc.*, 221 Ill. App. 3d 966, 973 (1991). If the insurer adequately informs the insured that it is proceeding under a reservation of rights, identifying the policy provisions that may preclude coverage, and the insured accepts defense counsel provided by the insurer, then the insurer is not estopped from asserting policy defenses. See *State Farm Fire & Casualty Co. v. Martinez*, 384 Ill. App. 3d 494, 498 (2008); *Stoneridge Development Co. v. Essex Insurance Co.*, 382 Ill. App. 3d 731, 741 (2008); *Royal Insurance*, 221 Ill. App. 3d at 974.

¶ 21    In the case at bar, Standard's reservation-of-rights letter specifically referred to the coverage defense and conflict of interest regarding violations of penal statutes. Also, the 12-page letter included an extensive list of policy defenses Standard planned to assert. 2012 IL

App (4th) 110527, ¶¶ 7-8, 24-25. Thus, Lay knowingly and intelligently chose to accept defense counsel provided by Standard. Further, Locklear does not, and cannot, argue that Lay was prejudiced by the representation of Standard's retained attorney, Mendillo, between July and October 2009. Indeed, despite Mendillo's participation in the case, Lay retained its own counsel and negotiated the settlement in the underlying action. Although the issue of whether an insured has been prejudiced is generally a question of fact for a jury, it is properly decided on a motion for summary judgment if there is no factual basis from which a jury could find prejudice. See *American States Insurance Co. v. National Cycle, Inc.*, 260 Ill. App. 3d 299, 310 (1994); *Mid-State Savings & Loan Ass'n v. Illinois Insurance Exchange, Inc.*, 175 Ill. App. 3d 265, 271-72 (1988).

¶ 22 Standard availed itself of both of its only available options to ascertain its rights and responsibilities pursuant to the terms of the insurance policies. Standard agreed to defend Lay subject to a thoroughly discussed reservation of rights, and it filed a declaratory judgment action. We uphold the appellate court's conclusion that Standard is not estopped from asserting coverage defenses.

¶ 23 B. Insurability of TCPA Damages

¶ 24 Locklear next contends that the TCPA-prescribed damages of $500 per violation are insurable under Illinois law. An insurance policy is a contract, and the general rules governing the interpretation of contracts also govern the interpretation of insurance policies. If the policy language is unambiguous, the policy will be applied as written unless it contravenes public policy. *Nicor, Inc. v. Associated Electric & Gas Insurance Services Ltd.*, 223 Ill. 2d 407, 416-17 (2006); *Hobbs v. Hartford Insurance Co. of the Midwest*, 214 Ill. 2d 11, 17 (2005). In the case at bar, the appellate court did not base its decision on the language of Lay's insurance policies, but rather on its conclusion that the TCPA-prescribed damages of $500 per violation constitute punitive damages, which are uninsurable as a matter of Illinois public policy. 2012 IL App (4th) 110527, ¶ 37.

¶ 25 Assigning error to this conclusion, Locklear offers several alternative arguments. First, Locklear advances that punitive damages are uninsurable under Illinois law as a matter of public policy, but argues that the TCPA is a remedial and not a penal statute, and the statutory damages of $500 per violation are not punitive damages. Second, Locklear again advances that punitive damages are uninsurable in Illinois, but argues that the facts of this case fall within an exception to the rule of uninsurability. Third, Locklear urges this court to declare that all punitive damages are insurable under Illinois law. Our resolution of Locklear's first argument is dispositive of this contention. Whether the TCPA is a penal statute and the statutory damages of $500 per violation are punitive damages is a matter of statutory interpretation, which is reviewed *de novo*. *Progressive Universal Insurance*, 215 Ill. 2d at 128; *Williams v. Staples*, 208 Ill. 2d 480, 487 (2004).

¶ 26 The guiding principles are familiar. " 'Our task is to give effect to the will of Congress, and where its will has been expressed in reasonably plain terms, that language must ordinarily be regarded as conclusive.' " *Negonsott v. Samuels*, 507 U.S. 99, 104 (1993) (quoting *Griffin v. Oceanic Contractors, Inc.*, 458 U.S. 564, 570 (1982)). A court construes

-6-

statutory language in light of its surrounding terms. *Federal Communications Comm'n v. AT&T Inc.*, 562 U.S. ___, ___, 131 S. Ct. 1177, 1183 (2011). Thus, in construing a statute, a court must not focus exclusively on a single sentence or phrase, but must view the statute as a whole. The court may consider the reason for the law, the problems sought to be remedied, and the purposes to be achieved. *United States National Bank of Oregon v. Independent Insurance Agents of America, Inc.*, 508 U.S. 439, 454-55 (1993). Each word, clause and sentence of a statute must be given reasonable meaning, if possible, and should not be rendered superfluous. *TRW Inc. v. Andrews*, 534 U.S. 19, 31 (2001). Accord *Williams*, 208 Ill. 2d at 487; *In re Detention of Lieberman*, 201 Ill. 2d 300, 307-08 (2002).

¶ 27    Several courts have recounted the reasons for the TCPA and the problems sought to be remedied. In enacting the TCPA, Congress made several pertinent findings. Unrestricted telemarketing was regarded as an intrusive invasion of privacy. *Mims v. Arrow Financial Services, LLC*, 565 U.S. ___, ___, 132 S. Ct. 740, 745 (2012); accord *Valley Forge Insurance Co. v. Swiderski Electronics, Inc.*, 223 Ill. 2d 352, 365 (2006) (concluding that "[t]he receipt of an unsolicited fax advertisement implicates a person's right of privacy insofar as it violates a person's seclusion"). Many consumers were outraged by the proliferation of intrusive, nuisance telemarketing calls to their homes. At least 40 states had enacted legislation restricting unsolicited telemarketing. However, those state laws had limited effect because states lack jurisdiction over interstate calls. Thus, many states expressed a desire for federal legislation. *Mims*, 565 U.S. at ___, 132 S. Ct. at 745. Accordingly, Congress enacted the TCPA to address telemarketing abuses attributable to the use of automated telephone calls to devices including telephones, cellular telephones, and fax machines. The purposes of the TCPA are to protect the privacy interests of residential telephone customers by restricting unsolicited automated telephone calls to the home, and facilitating interstate commerce by restricting certain uses of fax machines and automatic dialers. *Italia Foods, Inc. v. Sun Tours, Inc.*, 2011 IL 110350, ¶ 13.

¶ 28    The TCPA outlaws four practices. The Act: (1) makes it unlawful to use an automatic telephone dialing system, or an artificial or prerecorded voice message, without the prior express consent of the called party, to call any emergency telephone line, hospital patient, pager, cellular telephone, or other service for which the receiver is charged for the call; (2) forbids using artificial or prerecorded voice messages to call residential telephone lines without prior express consent; (3) proscribes sending unsolicited advertisements to fax machines; and (4) bans using automatic telephone dialing systems to engage simultaneously two or more telephone lines of a business. 47 U.S.C. § 227(b)(1)(A) through (D) (2006); *Mims*, 565 U.S. at ___, 132 S. Ct. at 745. The TCPA provides three complementary means of enforcement. First, a state Attorney General may bring a civil action on behalf of a state's residents. 47 U.S.C. § 227(f)(1) (2006). Second, the Federal Communications Commission (FCC) may intervene as of right in such actions, and may institute civil actions for violations of the implementing regulations. *Id.* § 227(f)(3), (f)(7). Federal district courts have exclusive jurisdiction over TCPA actions brought by state attorneys general and the FCC. *Id.* § 227(f)(2). Third, persons may bring actions on their own behalf in state courts. *Id.*

§ 227(b)(3); *Mims*, 565 U.S. at \_\_\_, 132 S. Ct. at 746.[4]

¶ 29     The TCPA describes the private right of action as follows:

> "A person or entity may, if otherwise permitted by the laws or rules of court of a State, bring in an appropriate court of that State—
>
> (A) an action based on a violation of this subsection or the regulations prescribed under this subsection to enjoin such violation,
>
> (B) an action to recover for actual monetary loss from such a violation, or to receive $500 in damages for each violation, whichever is greater, or
>
> (C) both such actions.
>
> If the court finds that the defendant willfully or knowingly violated this subsection or the regulations prescribed under this subsection, the court may, in its discretion, increase the amount of the award to an amount equal to not more than 3 times the amount available under subparagraph (B) of this paragraph." 47 U.S.C. § 227(b)(3) (2006).

¶ 30     In the case at bar, the appellate court observed that a statute is penal if it (1) imposes automatic liability for a violation of its terms; (2) sets forth a predetermined amount of damages; and (3) imposes damages without regard to the actual damages suffered by the plaintiff. 2012 IL App (4th) 110527, ¶ 36; see *Landis v. Marc Realty, L.L.C.*, 235 Ill. 2d 1, 12-13 (2009). The court concluded that the TCPA is a penal statute, reasoning as follows:

> "The 'actual' damages incurred by a violation of the TCPA are more in the nature of an irksome nuisance, and liability is not predicated on proving them. In fact, in the event of minuscule damages, the TCPA provides for a finding of the amount of damage or $500 per occurrence, whichever is greater. Actual damages to any one individual are likely to be small. Five hundred dollars then becomes a predetermined amount of damages and is clearly not meant to compensate for any actual harm." 2012 IL App (4th) 110527, ¶ 36.

We disagree. The manifest purpose of the TCPA is remedial and not penal.

¶ 31     The TCPA is "clearly within the class of remedial statutes which are designed to grant remedies for the protection of rights, introduce regulation conducive to the public good, or cure public evils." *Scott v. Association for Childbirth at Home, International*, 88 Ill. 2d 279, 288 (1981). We earlier recounted that Congress enacted the TCPA to address telemarketing abuses attributable to the receipt of unsolicited faxes. Congress clearly identified the animating purpose of the TCPA: to prevent advertisers from unfairly shifting the cost of their advertisements to consumers while simultaneously preventing the use of their fax machines for legitimate purposes. *Terra Nova Insurance Co. v. Fray-Witzer*, 869 N.E.2d 565, 575

---

[4]Resolving a split among federal courts of appeals, the United States Supreme Court has held that federal district courts have federal-question jurisdiction over private TCPA claims. *Mims*, 565 U.S. at \_\_\_, 132 S. Ct. at 747; see *Brill v. Countrywide Home Loans, Inc.*, 427 F.3d 446, 449-51 (7th Cir. 2005) (same).

(Mass. 2007); *Universal Underwriters Insurance Co. v. Lou Fusz Automotive Network, Inc.*, 401 F.3d 876, 881 (8th Cir. 2005); *Missouri ex rel. Nixon v. American Blast Fax, Inc.*, 323 F.3d 649, 654-55 (8th Cir. 2003). "Although the monetary impact of a single unsolicited fax is minor, it is nevertheless a cost borne by the recipient and recognized by Congress as a compensable harm." *Universal Underwriters*, 401 F.3d at 880. The harms identified by Congress, *e.g.*, loss of paper and ink, annoyance and inconvenience, while small in reference to individual violations of the TCPA are nevertheless compensable and are represented by a liquidated sum of $500 per violation. *Id.* at 881.

¶ 32        Also, Congress intended the $500 liquidated damages available under the TCPA to be, at least in part, an incentive for private parties to enforce the statute. This added incentive is necessary because the actual losses associated with individual violations of the TCPA are small. Whether we view the $500 statutory award as a liquidated sum for actual harm, or as an incentive for aggrieved parties to enforce the statute, or both, the $500 fixed amount clearly serves more than purely punitive or deterrent goals. *Penzer v. Transportation Insurance Co.*, 545 F.3d 1303, 1311 (11th Cir. 2008); *Universal Underwriters*, 401 F.3d at 881; *Melrose Hotel Co. v. St. Paul Fire & Marine Insurance Co.*, 432 F. Supp. 2d 488, 509 & n.10 (E.D. Pa. 2006), *aff'd sub nom. Subclass 2 v. Melrose Hotel Co.*, 503 F.3d 339 (3d Cir. 2007); *Motorists Mutual Insurance Co. v. Dandy-Jim, Inc.*, 912 N.E.2d 659, 667 (Ohio Ct. App. 2009); *Terra Nova Insurance*, 869 N.E.2d at 576.

¶ 33        Further, the fact that Congress provided for treble damages separate from the $500 liquidated damages indicates that the liquidated damages serve additional goals than deterrence and punishment and were not designed to be punitive damages. *Penzer*, 545 F.3d at 1311; *Universal Underwriters*, 401 F.3d at 881. We observe that the possible imposition of treble damages does not make the TCPA a penal statute. Rather, this possible penalty "is but one part of the regulatory scheme, intended as a supplemental aid to enforcement rather than as a punitive measure." *Association for Childbirth*, 88 Ill. 2d at 288 (explaining section 7 of Consumer Fraud and Deceptive Business Practices Act (815 ILCS 505/7 (West 2010))). We hold that the TCPA is a remedial and not a punitive statute, and that the $500 liquidated damages per violation are not punitive damages.

¶ 34        We disagree with decisions concluding that the TCPA-prescribed damages of $500 per violation constitute penal or punitive damages. See *US Fax Law Center, Inc. v. iHire, Inc.*, 362 F. Supp. 2d 1248, 1253 (D. Colo. 2005), *aff'd*, 476 F.3d 1112 (10th Cir. 2007); *Kruse v. McKenna*, 178 P.3d 1198, 1201 (Colo. 2008) (*en banc*); *Kaplan v. Democrat & Chronicle*, 698 N.Y.S.2d 799, 800 (App. Div. 1999) (mem.) Rather, we believe that the cases to which we have cited ascertained the true intent of Congress in enacting the TCPA. See *State Bank of Cherry v. CGB Enterprises, Inc.*, 2013 IL 113836, ¶ 53 (explaining that if the federal courts are split on how they construe a federal statute, then the importance of uniformity recedes and this court will follow the line of cases it believes to be properly decided).

¶ 35        As earlier noted, Locklear alternatively argues: the facts of this case fall within an exception to Locklear's advanced rule of uninsurability of punitive damages; and all punitive damages should be insurable. However, we have held that the TCPA is remedial and not penal, and the TCPA-prescribed damages of $500 per violation are not punitive damages.

The alternative arguments that Locklear presents are not necessary to the disposition of this case. The rule that Locklear suggests for either of these arguments would have no bearing on the remedial TCPA and its nonpunitive liquidated damages of $500 per violation. "We will not decide an issue that has no bearing on the case before this court." *Barth v. Reagan*, 139 Ill. 2d 399, 419 (1990). Therefore, we need not and do not address these alternative arguments. See *Italia Foods*, 2011 IL 110350, ¶ 41 (collecting cases); *Nicor*, 223 Ill. 2d at 438; *Condon v. American Telephone & Telegraph Co.*, 136 Ill. 2d 95, 99 (1990).

¶ 36     Further, the appellate court did not address all of the issues that Locklear raised on appeal because the court concluded that the TCPA-prescribed damages of $500 per violation were uninsurable punitive damages. 2012 IL App (4th) 110527, ¶ 28. Because we hold that they are not, we remand the cause to the appellate court for consideration of Locklear's remaining contentions. See, *e.g.*, *Carter v. SSC Odin Operating Co.*, 237 Ill. 2d 30, 51 (2010); *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 503 (2009).

¶ 37                              III. CONCLUSION

¶ 38     For the foregoing reasons, the judgment of the appellate court is affirmed in part and reversed in part, and the cause remanded to the appellate court for further proceedings consistent with this opinion.

¶ 39     Affirmed in part and reversed in part.

¶ 40     Cause remanded.