2020 IL App (1st) 191047-U

FIRST DIVISION
December 28, 2020

No. 1-19-1047

**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

IN THE
APPELLATE COURT OF ILLINOIS
FIRST DISTRICT

| | | |
|---|---|---|
| JESUS DIAZ, a Minor, by His Mother & Next Friend, Heglae M. Lopez, | ) ) ) | Appeal from the Circuit Court of Cook County |
| Plaintiff-Appellant, | ) ) | |
| v. | ) ) | No. 15 L 11355 |
| THE CHICAGO BOARD OF EDUCATION, | ) ) ) | The Honorable Tonya T. Harvey, |
| Defendant-Appellee. | ) ) | Judge Presiding. |

JUSTICE PIERCE delivered the judgment of the court.
Presiding Justice Walker and Justice Coghlan concurred in the judgment.

**ORDER**

¶ 1    Held:    The judgment of the circuit court is affirmed. Defendant was entitled to immunity from plaintiff's tort claim because the decision to develop and implement a safety plan was discretionary and not a ministerial act. Additionally, plaintiff could not establish that any failure to properly supervise a student amounted to willful and wanton conduct, or that any of defendant's alleged conduct was a proximate cause of plaintiff's injuries.

¶ 2    Plaintiff, Jesus Diaz, by and through his mother, Heglae M. Lopez, appeals from the circuit court's entry of summary judgment in favor of defendant, the Chicago Board of Education. Plaintiff sought to hold defendant liable for injuries Diaz sustained at a Chicago public school

allegedly caused by defendant's failure to implement a plan to protect students from another student with a documented history of misconduct. The circuit court found that defendant was entitled to immunity pursuant to section 2-201 of the Local Governmental and Governmental Employees Tort Immunity Act (Act) (745 ILCS 10/2-201 (West 2014)). For the following reasons, we affirm the circuit court's judgment.

¶ 3                                    I. BACKGROUND

¶ 4     Plaintiff's amended complaint, which is the operative complaint on appeal, contained the following allegations. In April 2015, Jesus Diaz was a special education student at Claremont Academy Elementary School (Claremont), a Chicago public school under defendant's supervision. Diaz was injured during class when another special education student, A.P., "pull[ed] very hard" on Diaz's arm. On a prior occasion in September 2014, A.P. punched Diaz. Diaz's mother, Heglae, informed Diaz's teachers, Annie Casey and Mildred Johnson, of A.P.'s "physical and verbal harassment" toward Diaz, and informed Johnson "at least twice" of A.P.'s "aggression" toward Diaz between September 2014 and April 2015. Prior to being a student at Claremont, A.P. was a student at Carrie Jacobs Bond Elementary School (Bond) in Chicago for the 2013-14 school year, where on October 22, 2013, he "repeatedly threatened to do bodily harm to another student and posed a threat to the safety of other students and staff members." As a result of those threats, A.P. was suspended for two days from Bond "and the staff was directed to develop a safety plan and/or plan/review specific social, emotional, or behavioral interventions" for A.P. to avoid further interruption or endangerment of students and staff. Defendant, however, failed to develop or implement a plan while A.P. was at Bond. A.P. transferred from Bond to Claremont for the 2014-15 school year. Defendant failed to inform the principal and teachers at Claremont of the threats A.P. made in October 2013 while a student at Bond. Defendant "acted willfully and wantonly by

2

consciously disregarding" Diaz's safety by allowing A.P. to "continue inflicting harm upon" Diaz. Defendant failed to (1) remove A.P. from the same classroom as Diaz; (2) move Diaz to a different classroom; (3) transfer A.P. out of Claremont; and (4) employ an adequate number of staff to ensure the safety of students at Claremont, all in "conscious disregard for the safety of" Diaz, and defendant's omissions proximately caused Diaz's injury. Defendant answered the complaint and the parties engaged in discovery, including numerous depositions, which we will discuss in more depth as needed in our analysis. The matter proceeded to an arbitration, but defendant rejected the arbitration award.

¶ 5    Defendant moved for summary judgment. Defendant argued in relevant part that it was entitled to immunity under section 2-201 of the Act because defendant's decision not to create a safety plan for A.P. at Bond or Claremont was discretionary where defendant relied on A.P.'s Individual Education Plan (IEP) in making decisions regarding his placement, and that decisions regarding classroom management for students, including students with cognitive disabilities, were also discretionary. Alternatively, defendant argued that plaintiff could not establish that defendant's actions rose to the level of willful and wanton conduct under section 3-108 of the Act (745 ILCS 10/3-108(a) (West 2014)). After briefing and oral argument, the circuit court entered summary judgment in favor of defendant "for [the] reasons stated on the record." The circuit court stated on the record that defendant was entitled to immunity and that defendant did not have a duty to create a safety plan for A.P. Plaintiff filed a timely notice of appeal.

¶ 6                                II. ANALYSIS

¶ 7    On appeal, plaintiff argues that (1) defendant owed Diaz a duty of care; (2) defendant did not establish that any school officials made any policy determinations or exercised any discretion

by not creating a safety plan for A.P.; and (3) defendant's failure to create or implement a safety plan was willful and wanton conduct. We address these arguments in turn.

¶ 8    Summary judgment is appropriate if the pleadings, depositions, affidavits, and other admissions on file establish that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. 735 ILCS 5/2-1005(c) (West 2016); *Cohen v. Chicago Park District*, 2017 IL 121800, ¶ 17. The purpose of summary judgment is not to try a question of fact, but rather to determine whether one exists. *Robidoux v. Oliphant*, 201 Ill. 2d 324, 335 (2002). "In determining whether a genuine issue of material fact exists, the court must construe the pleadings, depositions, admissions, and affidavits strictly against the movant and liberally in favor of the nonmovant." *West Bend Mutual Insurance Co. v. DJW-Ridgeway Building Consultants, Inc.*, 2015 IL App (2d) 140441, ¶ 20. We review a circuit court's ruling on summary judgment *de novo*. *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, ¶ 15.

¶ 9    Plaintiff's first argument, that defendant owed Diaz a duty of care, is not actually in dispute. The only argument raised by defendant in the circuit court regarding duty—which defendant does not argue on appeal—was that it did not owe any duty to protect against criminal acts. On appeal, plaintiff does not pursue any theory that defendant was liable for Diaz's injuries because A.P. committed a criminal act, *i.e.*, a battery. It is therefore uncontested that defendant owed Diaz a duty of care, and the only issues before us relate to whether defendant was immune from tort liability under the Act. Plaintiff's assertion that our supreme court has held that the issue of whether a duty is owed must be determined before a court reaches the issue of immunity (see *Harris v. Thompson*, 2012 IL 112525, ¶ 17 ("[W]hether a local public entity owed a duty of care and whether that entity enjoyed immunity are separate issues. Once a court determines that a duty exists, it then

addresses whether the Act applies."")) is mere surplusage and does not affect the outcome of this appeal.

¶ 10    Plaintiff's first substantive argument is that defendant did not establish that any school officials made any policy determinations or exercised any discretion by not creating a safety plan for A.P. Section 2-201 of the Act provides

> "Except as otherwise provided by Statute, a public employee serving in a position involving the determination of policy or the exercise of discretion is not liable for an injury resulting from his act or omission in determining policy when acting in the exercise of such discretion even though abused." 745 ILCS 10/2-201 (West 2014).

Section 2-201 applies to discretionary acts but not ministerial acts. As we have observed,

> "The distinction between a discretionary act and a ministerial act must be made on a case-by-case basis, and courts have recognized that discretionary acts are those that are unique to a particular public office, whereas ministerial acts are those that a person performs based on a given set of facts, in a prescribed manner, in accordance with a mandate of legal authority, and without reference to the official's discretion as to the propriety of that act." *Malinksi v. Grayslake Community High School District 127*, 2014 IL App (2d) 130685, ¶ 8.

¶ 11    Plaintiff contends that section 2-201 of the Act does not apply because defendant was required to create and implement a safety plan after the October 2013 incident at Bond that led to A.P.'s suspension, based on a 2013 Misconduct Report made in the wake of that incident. The 2013 Misconduct Report stated, in a section titled "Suspension Duration Rationale," that "Staff need to develop a safety plan and/or plan/revise specific social, emotional, or behavioral

interventions in order to ensure the student's attendance does not continue causing chronic/extreme interruption to other students or endanger the physical, emotional or mental safety of specific students/staff." Plaintiff relies in part on the deposition of Valesta Cobbs, the principal at Bond. Cobbs was asked whether the 2013 Misconduct Report was "a mandatory measure that should be taken, or does someone at [defendant] have discretion not to do that?" She responded that "[s]omeone at [defendant] needs to do this." Plaintiff also relies on the deposition of Cordero Mayo, the head of security at Bond in October 2013, who testified that misconduct reports "always ended up with Ms. Cobbs making a final word," and that Cobbs was the one at Bond who would determine whether to include language in a misconduct report about a need to implement a safety plan. Plaintiff argues that the 2013 Misconduct Report "did not require balancing interests and exercising discretion," but instead "mandated a certain and absolute course of conduct to be taken and required merely the execution of a set task[.]" We disagree.

¶ 12    Cobbs testified that, when developing a plan to prevent students from harming other students, she would involve a parent and try "to find out what is going on with the student to cause [them] to behave in such a way" and then "put in place some rewards and consequences for the student or some type of restorative practices so that the student can see what appropriate behavior is and *** what the consequences of inappropriate behavior are." There were various methods of implementing the plan, none of which were mandatory. She further testified if a student transferred to a new school, it was up to the discretion of the receiving school's principal whether to coordinate with the transferor school to continue any existing safety plan. Mary Beth Padezanin, who was an assistant principal at Claremont in 2015 who handled discipline, testified that disciplinary situations were handled based on what the situation called for. When a new student enrolled at Claremont, the school would receive their enrollment forms, the IEP if there was one, and the

student's medical records. Claremont would "not necessarily" receive a safety plan from another school and did not receive misconduct reports. She had never seen a safety plan transferred from another school. She testified that safety plans were developed "in house" and that she had never been directed to create a safety plan. Implementation of a safety plan would be personalized for each student based on the student's IEP.

¶ 13    Here, plaintiff does not identify any evidence in the record or any relevant authority establishing that Claremont was required to implement the safety plan contemplated by Bond's 2013 Misconduct Report. The record before us makes plain that the decision to develop and implement a safety plan falls within the principal's discretion. Contrary to plaintiff's argument, Bond's 2013 Misconduct Report for A.P. did not create a ministerial act to be carried out at Claremont. The decision to create and implement a safety plan at Claremont was within Claremont's discretion. Therefore, defendant was entitled to immunity under 2-201 of the Act.

¶ 14    Plaintiff's final argument is that defendant's failure to create or implement a safety plan and transmit information about A.P.'s behavioral issues amounted to willful and wanton conduct. Plaintiff is essentially arguing that defendant failed to properly supervise A.P. and did so with an utter indifference to or a conscious disregard for the safety of other students. We again disagree.

¶ 15    Section 3-108(a) of the Act provides

> "Except as otherwise provided in this Act, neither a local public entity nor a public employee who undertakes to supervise an activity on or the use of any public property is liable for an injury unless the local public entity or public employee is guilty of willful and wanton conduct in its supervision proximately causing such injury." 745 ILCS 10/3-108(a) (West 2014).

Willful and wanton conduct is defined under the Act as "a course of action which shows an actual or deliberate intention to cause harm which, if not intentional, shows an utter indifference to or conscious disregard for the safety of others or their property[.]" 745 ILCS 10/1-210 (West 2014). Generally, the issue of whether conduct was willful and wanton is a question of fact. *Mitchell v. Special Education Joint Agreement School District No. 208*, 386 Ill. App. 3d 106, 111 (2008). However, "where the record shows absolutely no evidence that the defendant displayed either an utter indifference to or a conscious disregard for the plaintiff's safety, then the court may properly decide the issue as a matter of law." *Id.*

¶ 16    Plaintiff's argument must fail because he does not identify any evidence in the record tending to show that defendant acted with an utter indifference to or conscious disregard for the safety of its students. The sole evidence plaintiff relies on to support his willful and wanton argument is A.P.'s mother's deposition, in which she testified that she personally called the principal at Claremont and told her about the October 2013 incident. But it is undisputed that defendant transferred A.P. to Claremont, a school which was better suited than Bond to address A.P.'s behavioral needs; A.P. was in a "general education" classroom at Bond, whereas Claremont offered smaller class sizes and cluster-style classrooms offering modified curriculums for students with special needs. Padezanin testified that when a student transferred to Claremont, the school would receive a student's IEP, if there was one. The IEP contains information about a student's social, emotional, behavioral, and physical health, and contains recommendations as to what program that student should be in. It is undisputed that A.P. was placed in a cluster program based on his learning and behavioral disabilities. In other words, defendant took steps to place A.P. at a school where its staff was aware that A.P. had cognitive and behavioral issues and was better suited to address those issues.

¶ 17    As discussed above, safety plan decisions at Claremont were handled "in house." Pandezanin testified that A.P. did not "stand out as a behavior problem," and she had not heard of him threatening students, disrupting class, or hurting other students during the 2014-15 school year at Claremont prior to the April 2015 incident. She had not had any complaints from other students or teachers about his behavior and did not consider him to be an aggressive student. Annie Casey, one of A.P.'s and Diaz's teachers during the 2014-15 school year, testified that A.P. "stood out as an athletic nice young boy." He did not exhibit any behavior that she considered disruptive. She never saw him threaten or strike another student or staff member, and she never saw him bully another student, be rude to another student, or engage in spontaneous inappropriate behavior. Mildred Johnson, another of A.P.'s and Diaz's teachers during the 2014-15 school year, similarly testified that A.P. never threatened to do bodily harm to another student and never demonstrated conduct where he was a threat to the physical, emotional, or mental health of other students. She testified that A.P. "was one of my helpers" and was a "classroom assistant" because he was high functioning. He was never aggressive toward other students, or belligerent or disrespectful toward Johnson. He never had problems with other students in the classroom or on school grounds. No parents ever complained about A.P. Demetrius Few, a special education classroom assistant at Claremont, testified that A.P. interacted fine with students and teachers, and did not recall A.P. having any behavioral problems or threatening anybody, and did not recall A.P. getting into any fights or being disruptive. He recalled A.P. and Diaz being friends. He never saw A.P. hit Diaz and did not recall any complaints of hitting.

¶ 18    Simply put, plaintiff does not direct our attention to any evidence in the record reflecting that defendant acted with utter indifference to or a conscious disregard for the safety of its students at Claremont by not developing or implementing a safety plan for A.P. when defendant transferred

A.P. to Claremont. The record demonstrates that A.P. was placed at Claremont due to the availability of cluster programs suited to A.P.'s needs. Plaintiff came forward with no evidence that defendant acted with utter indifference to, or conscious disregard for Claremont's students.

¶ 19 Finally, even if there were some facts in the record that might arguably establish willful and wanton conduct, defendant correctly argues that plaintiff would be unable to establish that defendant's alleged failure to properly supervise A.P. was a proximate cause of Diaz's injury. The undisputed evidence in the record at the summary judgment stage demonstrated that Diaz was injured when A.P. helped Diaz stand up from a beanbag chair in the classroom. Plaintiff does not direct our attention to any facts in the record tending to show that A.P.'s act of helping plaintiff out of a chair is causally connected to any misconduct or would have been affected in any manner had there been a safety plan in place. Plaintiff has not advanced any argument on appeal that there is a causal connection between defendant's failure to properly supervise A.P. and the injury Diaz suffered, which is a separate basis for affirming the judgment of the circuit court.

¶ 20 In sum, we find no error in the circuit court's judgment that defendant was entitled to immunity from plaintiff's claim.

¶ 21                                    III. CONCLUSION

¶ 22 For the foregoing reasons, the judgment of the circuit court is affirmed.

¶ 23 Affirmed.