**NOTICE:** This order was filed under Supreme Court Rule 23 and may not be cited as precedent by any party except in the limited circumstances allowed under Rule 23(e)(1).

2023 IL App (3d) 220440-U

Order filed November 1, 2023

_____

_

IN THE

APPELLATE COURT OF ILLINOIS

THIRD DISTRICT

2023

| | | |
|---|---|---|
| NAPERVILLE HOTEL PARTNERS, LLC and SUPERHOST HOSPITALITY, INC., | ) ) ) | Appeal from the Circuit Court of the 18th Judicial Circuit, Du Page County, Illinois. |
| Plaintiffs-Appellants, | ) ) | |
| v. | ) ) | Appeal No. 3-22-0440 Circuit No. 21-MR-418 |
| LIBERTY MUTUAL FIRE INSURANCE COMPANY and FIREMAN'S FUND INSURANCE COMPANY, | ) ) ) ) | The Honorable Bonnie M. Wheaton, |
| Defendants-Appellees. | ) ) | Judge, presiding. |

_____

_

JUSTICE McDADE delivered the judgment of the court.
Justices Albrecht and Hettel concurred in the judgment.

_____

_

**ORDER**

¶ 1     *Held*:   The circuit court did not err when it granted the defendant insurance companies' motions to dismiss the plaintiffs' declaratory judgment complaint.

¶ 2     The plaintiffs, Naperville Hotel Partners, LLC, and Superhost Hospitality, Inc., filed a

declaratory judgment action that sought a declaration of their rights under the insurance policies

they had with the defendants, Liberty Mutual Fire Insurance Company and Fireman's Fund Insurance Company (FFIC). The circuit court granted motions to dismiss filed by both defendants. On appeal, the plaintiffs allege that the court erred when it granted the defendants' motions to dismiss. We affirm.

¶ 3                                    I. BACKGROUND

¶ 4        Naperville Hotel Partners owned a hotel in Naperville (the Hotel), which opened in July 2015. Superhost managed the Hotel.

¶ 5        Numerous rain events occurred between 2015 and 2020 that caused leaks in the Hotel. Specifically, rain events occurred on May 10, 2016 (with damage being incurred that same day); October 11 and 14, 2017 (with damage being incurred on October 14 through October 17); June 21 and 22, 2018 (with damage being incurred on June 22); December 27, 2018 (with damage being incurred on December 29); April 27, 29, and 30 and May 1, 2019 (with damage being incurred on April 27 through May 1); and October 22 and 23, 2020 (with damage being incurred on both days). Superhost alleged that the leaks caused by the rain events resulted in several million dollars of damage to the Hotel. Based on that damage, Superhost filed a claim[1] on May 1, 2019, under insurance policies issued by FFIC and a claim on May 6, 2019, under an insurance policy issued by Liberty Mutual.

¶ 6                               A. The Liberty Mutual Policy

¶ 7        Liberty Mutual issued an insurance policy to Superhost that covered several buildings between October 31, 2016, and October 31, 2017. The Hotel was added to the policy later and

---

[1] The plaintiffs allege that on three occasions between January and April 2018, they provided notice of the water intrusion issues to Mesirow Insurance Services, Inc., which the plaintiffs alleged was FFIC's agent. FFIC has denied that Mesirow was its agent but accepts the plaintiffs' allegation as true "under the applicable standard."

was insured under the policy only for the 47-day period from September 15, 2017, to October 31, 2017. Naperville Hotel Partners was not a named insured on the policy.

¶ 8    The policy stated the following regarding the scope of coverage (all emphases in original): "**[w]e** will only pay for direct physical loss or damage to **covered property** of the type insured by this policy as a result of a **peril insured against** during the **policy period** shown on the Declaration." Additionally, the policy required the insured to "[g]ive **us** immediate written notice of the loss." Further, the policy required that any legal action based on the coverage had to be brought "within two (2) years after the date on which the physical damage occurred, extended by the number of days between the date **you** submitted the statement of loss to **us** and the date **we** deny the claim in whole or in part."

¶ 9    After the plaintiffs filed their claim with Liberty Mutual in May 2019, Liberty Mutual sent a reservation of rights letter to Superhost in June in which it stated that it had not been able to reach Superhost to discuss the claim. The letter requested more information and listed the "immediate written notice of loss" provision as a potential basis for excluding coverage but did not list the two-year time-limitation on legal action. Further, Liberty Mutual did not mention the provision in subsequent communications with Superhost in 2019. An August letter requested more information and included a paragraph on a reservation of rights. It also included several exclusions that could potentially apply, introduced with the statement, "[in] review of the support provided to date, it would appear that the following policy conditions, limitations or exclusions may apply." An email in late August to the plaintiffs' attorney stated that the adjuster had just received the attorney's representation letter and requested a discussion regarding the claim. The email also said Liberty Mutual was investigating the claim under a reservation of rights. An email in early September to that same attorney was simply a follow-up to the late August email

3

and further requested details on an inspection of the Hotel that took place on September 19 and 20. An October letter from Liberty Mutual requested more information and included several exclusions that could potentially apply, introduced with the statement, "[in] review of the support provided to date, it would appear that the following policy conditions, limitations or exclusions may apply."

¶ 10          On March 4, 2020, Liberty Mutual informed Superhost that it was denying coverage. The letter stated that coverage was being denied in part because Superhost failed to comply with the two-year time-limitation provision. The letter noted that Superhost claimed a date of loss as September 15, 2017, meaning that a suit had to be filed by September 15, 2019. The letter also stated that "[a]lternatively, if damages occurred after that date during the policy period, the policy term ended on October 31, 2017. Even if this were the case, you would have had to file suit on or before October 31, 2019." The letter also informed Superhost that there had been no tolling of the two-year time-limitation provision.

¶ 11                                    B.  The FFIC Policies

¶ 12          FFIC issued three insurance policies to the plaintiffs that covered the Hotel. Each policy was in effect for one year; the first policy covered October 31, 2017, through October 31, 2018, the second policy covered October 31, 2018, through October 31, 2019, and the third policy covered October 31, 2019, through October 31, 2020. The first two policies stated the following regarding the scope of coverage: "[w]e will pay for direct physical loss of or damage to Covered Property at the location described in the Declarations caused by or resulting from any Covered Cause of Loss." The third policy stated, "we will pay for direct physical loss or damage to **Property Insured** while at a **location \*\*\*** caused by or resulting from a **covered cause of loss** during the Policy Period." (Emphases in original).

4

¶ 13        Regarding notice of loss, all three policies required that the insured "[g]ive us prompt notice of the loss or damage."

¶ 14        The first two policies further required that any legal action based on the coverage had to be brought "within 2 years after the date on which the direct physical loss or damage occurred" and clarified that this time limitation was "extended by the number of days between the date the proof of loss is filed with us and the date we deny the claim in whole or in part." The third policy simply stated that legal action based on the coverage had to be brought "within 2 years after the date upon which the direct physical loss or damage occurred."

¶ 15        After Superhost filed its claim, constituting its first notice of damage, with FFIC in May 2019, FFIC sent a letter to Superhost on June 24, 2019. The letter first stated that Superhost had reported a date of loss of October 31, 2017. Then, the letter detailed that covered interior water damage in the amount of $2,242.12 was found on inspection, but because that amount was less than the $10,000 deductible, no payment would issue. The letter further stated that the exterior problems were not covered due to certain policy exclusions including floods and faulty construction or workmanship. The letter also contained a reservation of rights and a paragraph regarding the two-year time-limitation provisions.

¶ 16        An additional communication occurred between an FFIC adjuster and the plaintiffs' attorney in December 2019. An email from the adjuster to the attorney stated the following:

            "This is in response to your letter dated December 17,
            2019, regarding this claim for water damage.

                I have attached a copy of the partial disclaimer letter and
            estimate from Ryze Claims. We did not fully disclaim coverage
            for this loss. We do agree that there is coverage for the ensuing

5

water damage however the amount of the water damage to the structure was less than the policy deductible therefore payment was not issued."

¶ 17                              C.  The Plaintiffs' Action

¶ 18        On April 26, 2021, the plaintiffs filed a two-count complaint for declaratory relief, seeking rulings that the policies issued by the defendants provided coverage for the damages sustained at the hotel.  The plaintiffs amended their complaint three times, essentially just to add additional facts.  Only the second and third amended complaints are relevant to this appeal.

¶ 19        After the plaintiffs filed the second amended complaint in January 2022, Liberty Mutual filed a motion to dismiss the second amended complaint, alleging that it was time-barred under the two-year suit limitation provision contained in the policy.  Alternatively, Liberty Mutual alleged that the plaintiffs failed to comply with the immediate-notice-of-loss provision contained in the policy.

¶ 20        In May 2022 the circuit court held a hearing on Liberty Mutual's motion to dismiss. After hearing arguments, the court found that Liberty Mutual did not engage in any conduct that waived the two-year time-limitation provision contained in the policy.  The complaint was dismissed as to Liberty Mutual based on the plaintiffs' failure to comply with that provision.

¶ 21        After the plaintiffs filed the third amended complaint in June 2022, FFIC filed a motion to dismiss, alleging that the complaint was time-barred under the two-year suit limitation provisions contained in the policies.  Alternatively, FFIC alleged that the plaintiffs failed to comply with the prompt-notice provisions contained in the policies.

6

¶ 22    In October 2022, the circuit court held a hearing on FFIC's motion to dismiss. In granting the motion, the court found that the plaintiffs had notice of the water infiltration in July 2015 and did not comply with the reasonable notice provision of the FFIC policy.

¶ 23    The plaintiffs appealed from both orders granting the defendants' motions to dismiss.

¶ 24                              II. ANALYSIS

¶ 25    On appeal, the plaintiffs allege that the circuit court erred when it granted the defendants' motions to dismiss. We will address the motions to dismiss in turn.

¶ 26    Both motions to dismiss in this case were filed pursuant to section 2-619 of the Code of Civil Procedure (735 ILCS 5/2-619 (West 2020)). A section 2-619 motion to dismiss "admits the legal sufficiency of the plaintiffs' complaint, but asserts an affirmative defense or other matter that avoids or defeats the plaintiffs' claim." *DeLuna v. Burciaga*, 223 Ill. 2d 49, 59 (2006). When ruling on a section 2-619 motion, the circuit court must construe the pleadings and any supporting documents in the light most favorable to the nonmoving party. *Porter v. Decatur Memorial Hospital*, 227 Ill. 2d 343, 352 (2008). We review a circuit court's decision on a section 2-619 motion to dismiss *de novo*. *DeLuna*, 223 Ill. 2d at 59.

¶ 27                    A. Liberty Mutual's Motion to Dismiss

¶ 28    The plaintiffs argue that the two-year time-limitation provision contained in the Liberty Mutual policy did not begin to run at the time the Hotel first sustained damage from the rain events. The plaintiffs' argument is misplaced.

¶ 29    The plaintiffs do not accurately represent the coverage Superhost had on the Hotel with Liberty Mutual. In their statement of facts, the plaintiffs list two Liberty Mutual policies, one that was in effect from October 31, 2015, through October 31, 2016, and one that was in effect from October 31, 2016, through October 31, 2017. However, *nowhere* in the plaintiffs' brief do

7

they acknowledge that the Hotel was never listed as a covered property in the first policy and was not added to the second policy until September 15, 2017, meaning that the Hotel was covered by the Liberty Mutual policy only from that date until October 31, 2017—a period of 47 days. The significance of the plaintiffs' lack of candor cannot be overstated.

¶ 30      Even if the plaintiffs were correct that the two-year time-limitation provision did not begin to run at the time damage was first incurred, the plaintiffs' argument would be without merit. The only rain events that occurred during the time the Hotel was covered under the Liberty Mutual policy took place on October 11 and 14, 2017. Under the two-year time-limitation provision in the Liberty Mutual policy, the plaintiffs would have had to file their action against Liberty Mutual by October 14, 2019. Further, even assuming that the plaintiffs provided the "immediate written notice of the loss" required by the policy and further assuming that the limitation period was tolled for the 303 days between May 6, 2019 (date of notice of the loss) and March 4, 2020 (date of the denial of coverage), the plaintiffs still did not timely file their suit, which was not brought until April 2021. Clearly, the plaintiffs did not comply with the two-year time-limitation provision.

¶ 31      The plaintiffs contend, however, that Liberty Mutual waived, and should be estopped from asserting, its two-year time-limitation provision because (1) it did not include the provision in its June 2019 reservation of rights letter, and (2) its actions during the pendency of the claim indicated its intent to waive the provision.

¶ 32      Initially, we note that the plaintiffs have not directed this court to any statute or regulation that requires an insurance company to include a limitations provision in a reservation of rights,

nor are we aware of any such statute or regulation[2] that applies in this case. Rather, the plaintiffs rely on two cases: *Standard Mutual Insurance Co. v. Lay*, 2013 IL 114617, and *Illinois Insurance Guaranty Fund v. Nwidor*, 2018 IL App (1st) 171378. However, both of those cases involved reservation-of-rights letters in the context of the duty to defend; such cases are ultimately concerned with empowering an insured to "intelligently choose between retaining her own counsel, or accepting defense counsel provided by the insurer" (*Lay*, 2013 IL 114617, ¶ 20). This is not a case in which the duty to defend is at issue and the plaintiffs have not provided any persuasive argument that cases like *Lay* and *Nwidor* should be extended beyond the duty-to-defend context. Absent any primary or even persuasive authority, we reject the plaintiffs' argument that Liberty Mutual was required to include the two-year time-limitation provision in its initial reservation of rights letter in June 2019. Liberty Mutual did not waive the provision's applicability.

¶ 33      We further find nothing in the record to support the plaintiffs' claim that Liberty Mutual engaged in actions requiring it to be estopped from asserting the two-year time-limitation provision. " 'An insurer will be estopped from raising a limitations defense where its actions during negotiations are such as to lull the insured into a false sense of security, thereby causing him to delay the assertion of his rights.' " *Mitchell v. State Farm Fire & Casualty Co.*, 343 Ill. App. 3d 281, 285-86 (2003) (quoting *Hermanson v. Country Mutual Insurance Co.*, 267 Ill. App. 3d 1031, 1035 (1994). "Cases in which an insurer's conduct is found to amount to estoppel typically involve a concession of liability by the insurer, advance payments by the insurer to the

---

[2] An example of this type of regulation can be found in section 919.80(d)(8) of the Illinois Administrative Code (50 Ill. Admin. Code § 919.80(d)(8) (West 2020)), which requires insurance companies that issue "residential fire and extended coverage polic[ies]" to inform an insured, at the time a claim is denied in whole or in part, of the number of days a limitation period was tolled and how many days remain before the expiration of the limitation period.

plaintiff in contemplation of eventual settlement, and statements by the insurer which encourage the plaintiff to delay filing his action." *Foamcraft, Inc. v. First State Insurance Co.*, 238 Ill. App. 3d 791, 795 (1992). A review of Liberty Mutual's initial reservation of rights letter, as well as the communications it had with Superhost between August and October 2019, indicate that it never undertook any preclusive actions like the ones referenced in *Foamcraft*. Accordingly, we reject the plaintiffs' estoppel argument.

¶ 34    For the foregoing reasons, we hold that the circuit court did not err when it granted Liberty Mutual's motion to dismiss.

¶ 35                              B. FFIC's Motion to Dismiss

¶ 36    Regarding the FFIC policies, the plaintiffs argue, in part, that (1) the circuit court erred when it determined the two-year time-limitation provisions began to run on the date of the first water intrusion, and (2) FFIC waived, and should be estopped from asserting, its two-year time-limitation provisions.

¶ 37    Initially, we note that the circuit court granted FFIC's motion to dismiss solely on whether the plaintiffs provided "prompt notice of the loss" to FFIC. While the court did rule that the plaintiffs had notice of the first water intrusion back in July 2015, it made that finding relative to "notice" and did not specifically find that the two-year time-limitation provisions in the FFIC policies began to run at that time. Nevertheless, we choose to address the two-year time-limitation issue first. See, *e.g.*, *Simmons v. Campion*, 2013 IL App (3d) 125062, ¶ 22 (holding that "we can affirm the [circuit] court's decision on any basis supported by the record").

¶ 38    Here, the plaintiffs gave notice of the loss to FFIC on May 1, 2019, and reported the date of loss as October 31, 2017. Thus, even giving the plaintiffs the benefit of the doubt and taking its October 31, 2017, date of loss at face value, the plaintiffs did not timely file their action

10

against FFIC. The FFIC policy in effect at the time contained a two-year time-limitation provision. Taking into account the 54 days between the notice of loss on May 1, 2019, and the denial of coverage on June 24, the plaintiffs would have had to file their action by late December 2019. Again, they did not file suit until April 2021. Clearly, the plaintiffs did not comply with the two-year time-limitation provision.

¶ 39     As they claimed regarding Liberty Mutual, the plaintiffs claim that FFIC waived, and should be estopped from asserting, its two-year time-limitation provision. The plaintiffs argue that by FFIC's actions of communicating with them "long **after** the alleged statute of limitations expired without mentioning the policy's alleged statute of limitations, FFIC implied that [the plaintiffs'] claim was **not** barred by any statute [*sic*] of limitation." As an example, the plaintiffs highlight the December 2019 email from an FFIC adjuster to the plaintiffs' attorney. However, the plaintiffs misrepresent that email.

¶ 40     In their brief, the plaintiffs state that FFIC "expressly acknowledged that " 'We did not fully disclaim coverage for this loss' and went on to acknowledge that "there is coverage for the ensuing water damage …' " However, the email actually stated the following:

> "This is in response to your letter dated December 17, 2019, regarding this claim for water damage.
>
> I have attached a copy of the partial disclaimer letter and estimate from Ryze Claims. We did not fully disclaim coverage for this loss. We do agree that there is coverage for the ensuing water damage however the amount of the water damage to the structure was less than the policy deductible therefore payment was not issued."

11

¶ 41    Nothing about that email can reasonably be read as an offer to reconsider the decision to deny coverage or as any other action similar to the reasons listed in *Foamcraft* as noted above (*supra* ¶ 33). Here, FFIC denied coverage on June 24, 2019. It did nothing to create a "false sense of security and delay the plaintiffs from asserting their rights. See *Mitchell*, 343 Ill. App. 3d at 285-86. Accordingly, we reject the plaintiffs' waiver and estoppel argument.

¶ 42    Our decision on the two-year time-limitation provisions in the FFIC policies obviates the need to address the plaintiffs' argument that the circuit court erred when it ruled that the plaintiffs failed to give FFIC "prompt notice of the loss."

¶ 43                                III.  CONCLUSION

¶ 44    The judgment of the circuit court of Du Page County is affirmed.

¶ 45    Affirmed.